J-S60034-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSE L. GONZALEZ | |
| Appellant | No. 299 MDA 2014 |

Appeal from the Judgment of Sentence August 28, 2013
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000176-2013

BEFORE:  OTT, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED DECEMBER 22, 2014**

Jose Gonzalez ("Appellant") appeals the judgment of sentence imposed on August 28, 2013, following his conviction for attempted murder[1] and two counts of aggravated assault.[2]  After careful review, we affirm.

The trial court summarized the trial testimony and procedural history as follows:

>        On April 8, 2012, Magdalena Cruz (hereafter "Cruz") resided at 228 Brookside Apartments in the City of Lebanon, Pennsylvania.  Until roughly 2:00 a.m. on April 8, Cruz partied with friends at the Woofer Magoos Bar in downtown Lebanon. Among other people who partied together were Tiffany Koziara, Chris Malandra, Anthony DeJesus, Derek DeJesus and [Appellant].  When the bar closed, the group reconvened their

---

[1] 18 Pa.C.S. § 901(a).

[2] 18 Pa.C.S. § 2702(a)(1) & (4).

party at Cruz's home. Wanda Colon, Larry Graves and Jose Martinez (hereafter "Victim") attempted to join the party.

Shortly after [] the arrival of Colon, Graves and Victim, an argument ensued between Cruz and Victim over a cell phone. Cruz became frustrated and slapped Victim in the face. Anthony DeJesus and Derek DeJesus then began fighting with Victim near the top of a staircase. Graves attempted to intervene. At this point, a shot was fired and Victim fell to the bottom of the stairs. While lying at the bottom of the stairs, Victim looked up and saw [Appellant] holding a silver gun.

Following the shooting, Wanda Colon and Anthony DeJesus drove Victim to the hospital. They dropped him off in the front of the hospital and then drove away. At the time, Victim was breathing profusely. He was also paralyzed.

Cruz remained at her apartment and cleaned up blood and other evidence. The rest of the individuals at the party scattered. No one called the police. No one even advised staff at the hospital what had occurred.

Police were called to the Good Samaritan Hospital Emergency Room by hospital staff. Police arrived and were advised that Victim had been shot and was fighting for his life. Initially, police had no leads with respect to how, where or when the shooting occurred or whether anyone had witnessed it.

As of April 2012, Destiny Gonzalez was the fiancée of Victim. Ms. Gonzalez expected Victim to return home shortly after 2:00 a.m. When he did not arrive, Ms. Gonzalez attempted to reach Victim using his cell phone. Chris Malandra and Tiffany Koziara were in possession of Victim's cell phone. When Ms. Gonzalez called, Mr. Malandra and Ms. Koziara advised Ms. Gonzalez to call the Good Samaritan Hospital.

Police were able to piece together from Victim's family that Victim may have been attending a party at Cruz's apartment. Sergeant Jonathan Hess, Detective Keith Ulrich and Officer Ryan Margot responded to Cruz's apartment. Sgt. Hess observed a red stain on the door and floor mat. Officer Margot noticed what he believed to be blood on the baby gate at [sic] the stairwell.

Through investigation, police were able to learn the names of people reported to have been at Cruz's party during the early morning of April 8, [2012]. Seven of the ten people reported to

be present at the party were interviewed. It became quickly apparent to police that those who attended the party wanted to protect the culprit. For example, Cruz attempted to clean the crime scene. She also denied [Appellant] was even at the party at her house. When police attempted to speak to Tiffany Koziara, she would not answer the door to her home. When they eventually were able to speak to Ms. Koziara, she was not cooperative. Similarly, Anthony DeJesus told police that he did not even remember being at the party at Cruz's house. His brother Derek also denied being present at the party.

When Victim was medically able, Sgt. Hess conducted an interview. Victim was initially uncooperative. However, he later gave Sgt. Hess a full recorded statement. In that statement, he identified [Appellant] as the person he saw holding a silver gun immediately after he had been shot. At trial, Victim testified that he was "one hundred percent certain" that [Appellant] was the person holding the gun.

Sgt. Hess testified that he wanted to interview [Appellant], but he and his fellow officers could not locate him. Sgt. Hess spoke with [Appellant's] mother and his brothers. Police also spoke with informants. They contacted the Pennsylvania State Police Fugitive Task Force and the United States Marshal's Service. Unfortunately, [Appellant's] whereabouts remained unknown for nine months.

[Appellant] was finally apprehended on January 10, 2013. When questioned, [Appellant] denied that he was even at the party where the shooting occurred.

During their investigation, police learned that [Appellant] and Hasaan Hargett were Facebook friends. Police obtained a Facebook post dated April 18, 2012. That post referenced a "hammer" that [Appellant] had given to Mr. Hargett. [Appellant] messages [sic] Mr. Hargett and stated: "I felt safe knowing you had it because I know you wouldn't let it go in the wrong hands but now that you don't got it, I am not safe anymore?" Mr. Hargett responded that he had disposed of the "hammer" "with additional waste." Det. Ulrich testified that he was familiar with street terminology and that the term "hammer" refers to a gun. At trial, Mr. Hargett initially denied getting rid of anything for [Appellant]. He later acknowledged that he had discarded a bag that had been given to him by [Appellant].

At trial, Victim identified [Appellant] as the person who shot him.[1] In addition, the District Attorney's Office presented the Facebook communications sent by [Appellant] to Hasaan Hargett that, fairly interpreted, revealed that Hargett disposed of a gun on behalf of [Appellant]. The District Attorney also presented evidence that [Appellant] abruptly left Lebanon after the shooting.[2]

> [1] Specifically, the Victim said that [Appellant] was holding a gun immediately after he was shot. No one else was seen with a gun.
>
> [2] To be sure, inconsistent and obviously misleading testimony was presented from Magdelina [sic] Cruz, Lawrence Graves, Tiffany Koziara, Anthony DeJesus and Derek DeJesus. When evaluating issues pertaining to weight and sufficiency of evidence, this [c]ourt did not afford much weight to the testimony of the aforesaid individuals.
>
> On August 9, 2013, a jury convicted [Appellant] of all counts lodged against him. Sentencing occurred on August 28, 2013. As a result, this [c]ourt sentenced [Appellant] to a period of imprisonment of between 20 and 40 years.

Trial Court Post-Sentence Motion Opinion, January 9, 2014[3] ("Trial Court Opinion"), pp. 1-6 (record citations and capitalizations omitted).

On September 9, 2013, Appellant filed post-sentence motions raising: (1) a sufficiency of the evidence claim; (2) two claims relating to the trial court's denial of Appellant's motion *in limine* regarding the circumstances of Appellant's flight/arrest; (3) a claim that the trial court improperly instructed

---

[3] By Order dated March 6, 2014, the trial court forwarded the trial court file to this Court, noting that its January 9, 2014 opinion addressed Appellant's matters complained of on appeal. Accordingly, we will treat the trial court's January 9, 2014 opinion as its Pa.R.A.P. 1925(a) opinion.

the jury on whether Appellant's flight could be considered as consciousness of guilt; (4) a claim that the trial court improperly precluded Appellant from drawing a link in his closing argument between Anthony DeJesus' aggravated assault conviction and a defense claim that Anthony DeJesus may have been the shooter; (5) a weight of the evidence claim; and (6) a discretionary aspects of sentence claim.  The trial court denied Appellant's post-sentence motions on January 9, 2014.  Thereafter, Appellant filed a timely notice of appeal and complied with the trial court's order to file a statement of matters complained of on appeal.

Appellant raises the following issues for our review:

I.  Did the Commonwealth fail to present sufficient evidence at trial that:

- Appellant was at Brookside apartments on April 8, 2012, and that Appellant was the person who shot Jose Martinez?

- Appellant was guilty of Attempted Homicide?

II.  Did the Trial Court erred [sic] by:

- Denying Appellant's Motion In Limine to exclude the circumstances of Appellant's arrest on January 10, 2013, and by instructing the Jury that Appellant's alleged flight was consciousness of guilt[?]

- Instructing [d]efense [c]ounsel that he could not in his closing arguments draw a direct link between the fact that Anthony DeJesus had been convicted of an aggravated assault involving a handgun and that Anthony DeJesus may have been the shooter[?]

III.  Did the Jury place too great a weight on the testimony that Appellant was at 228 Brookside [A]partments on April 8, 2012, specifically, the testimony of Lawrence Graves, Magdelina [sic] Cruz, and Jose Martinez[?]

IV. Did the Sentencing Court err in sentencing the Appellant to the top of the standard range for his minimum sentence at Action Number CP-38-CR-175-2013 and running that sentence consecutively to the sentence imposed at Action Number CP-38-CR-176-2013 when the Appellant had a prior record score of zero and had only two (2) misdemeanor juvenile adjudications, and did the Sentencing Court consider improper facts when molding Appellant's sentence[?]

Appellant's Brief, p. 4.

Appellant first argues that the Commonwealth failed to prove that he committed the crime of attempted murder. *See* Appellant's Brief, pp. 10-13. Specifically, Appellant claims the Commonwealth failed to prove that he was at 228 Brookside Apartments and that he was the shooter. *Id.* He is incorrect.

When examining a challenge to the sufficiency of evidence, this Court's standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and

the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011).

The Crimes Code provides:

**(a) Definition of attempt.–**A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S. § 901. "A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa.Super.2008) (internal citations and quotations omitted). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Id.* "[A]ttempted murder requires an intent to bring about that result described by the crime of murder (i.e., the death of another)." *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa.Super.2004). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely by circumstantial evidence." *Jackson*, 995 A.2d at 444. "The law permits the fact finder to infer that one intends the natural and probable consequences of his acts." *Id.* "The offense of attempt to kill is completed by the discharging of a firearm at a person with the intent to kill,

despite the fortuitous circumstances that no injury is suffered." ***Commonwealth v. Mapp***, 335 A.2d 779, 781 (Pa.Super.1975) (necessary intent found for attempted murder where defendant shot at victim and missed). Additionally, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill" required for a first degree murder conviction. ***See Commonwealth v. Rega***, 933 A.2d 997, 1009 (Pa.2007); ***Commonwealth v. Cousar***, 928 A.2d 1025, 1034 (Pa.2007) ("a specific intent to kill may be inferred from the use of a deadly weapon on a vital part of a victim's body."). Further, evidence of flight is admissible for the purpose of establishing guilty knowledge. ***Commonwealth v. Gooding***, 649 A.2d 722, 726 (Pa.Super.1994) (*citing **Commonwealth v. Jones***, 319 A.2d 142, 149 (Pa.1974)).

Here, the trial court explained its rejection of Appellant's sufficiency of the evidence claim as follows:

> Although this [c]ourt believes that Graves lied at trial and that his written statement to police was in fact accurate, we nevertheless will not consider today the testimony of Graves or even of Cruz. In fact, the evidence that we will rely upon to reject [Appellant's] challenge to [the] . . . sufficiency of [the] evidence is as follows:
>
> (1) Victim testified that immediately after he was shot, he saw a gun in the hand of [Appellant]:
>
> > Q. Jose, as you are sitting here today are you certain that when you were shot that the person you saw holding the gun was [Appellant]?
> >
> > A. Yes, hundred percent.

(2)    Following the shooting, [Appellant] abruptly left Lebanon County.  He told a close friend that he likely would never return.

(3)    In a Facebook exchange, [Appellant] confirmed that he had given a "hammer" to hold and/or dispose for him.  Police testified that the term "hammer" refers on the streets to a gun.

To be sure, significant additional information and evidence was presented to the jury.  However, the three pieces of evidence outlined above, by themselves, are sufficient to support the jury's verdict.

1925(a) Opinion, pp. 11-12 (record citation, footnote, and capitalizations omitted).

Viewed in the light most favorable to the Commonwealth as verdict winner, the trial court properly concluded that this evidence was sufficient to convict Appellant of attempted murder.

Appellant also claims the trial court erred in denying his motion for a new trial based on a weight of the evidence claim.  *See* Appellant's Brief, pp. 15-16.  Specifically, Appellant claims the jury placed too much weight on the testimony of Magalena Cruz and the victim that Appellant was at 228 Brookside Apartments on April 8, 2012.  *Id.*  This claim lacks merit.

This Court's review of weight of the evidence claims is governed by the following standard:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.  Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.  An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  A trial judge must

- 9 -

do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa.2000) (internal citations, quotations, and footnote omitted).

Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice,[4] "such that right must be given another opportunity to prevail." *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997). Moreover, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Widmer*, 744 A.2d at 753. When reviewing the

_____

[4] This Court has explained the notion of "shocking to one's sense of justice" as follows:

When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

*Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super.2004) (internal citations and quotations omitted).

trial court's determination, this Court gives the gravest deference to the findings of the court below.  We review the court's actions for an abuse of discretion.  *Id.*

Simply stated, the jury's verdict in this matter implicitly illustrates that the jury found the victim's testimony that Appellant was at the scene of the crime and was holding the gun after the victim was shot to be credible and the testimony of the defense witnesses to the contrary to be incredible.  The verdict also demonstrates that the jury found other evidence of guilt significant, including Appellant's flight from Lebanon County, his statement to his friend that he would likely never return, and his Facebook post to Hasaan Hargett about the "hammer".  The trial court agreed with the jury's assessment in denying Appellant's post-sentence motion for a new trial based on the weight of the evidence.  *See* Trial Court Opinion, pp. 10-12. Nothing about the verdict or the trial court's reasoning shocks the conscience.  Appellant's weight of the evidence claim fails.

Next, Appellant argues the trial court erred in denying his motion *in limine* requesting the Commonwealth be precluded from discussing the circumstances of Appellant's arrest, including his flight following the commission of the crime.  *See* Appellant's Brief, pp. 13-14.  In a related claim, Appellant suggests that the trial court erroneously charged the jury regarding flight as consciousness of guilt.  *Id.*  Appellant is incorrect.

In reviewing the grant or denial of motions *in limine*, this Court applies an evidentiary abuse of discretion standard of review.  ***Commonwealth v.***

*Stokes*, 78 A.3d 644, 654 (Pa.Super.2013). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Alicia***, 92 A.3d 753, 760 (Pa.2014).

This Court has stated the well-established standard of review for admission of evidence claims as follows:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, [this Court's] standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super.2012). Further, as previously stated, evidence of flight is permissible for the purpose of establishing guilty knowledge. ***See Gooding***, ***supra***; ***see also Commonwealth v. Lukowich***, 875 A.2d 1169, 1173 (Pa.Super.2005) ("where evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt.").

Additionally, "[w]hen reviewing the propriety of a jury charge, an appellate court examines the charge as a whole. The trial court has broad discretion in formulating jury instructions, as long as the law is presented to

the jury in a clear, adequate, and accurate manner." ***Lukowich***, 875 A.2d

at 1174 (internal citation omitted).

Here, the trial court explained its decision to allow evidence of

Appellant's flight following the crime as follows:

> In this case, [Appellant] abruptly left his home in Lebanon
> County. In communication [Appellant] had with Hasaan Hargett,
> [Appellant] indicated he might never be returning. [Appellant's]
> abrupt relocation away from Lebanon County coincided to the
> day with the shooting that permanently paralyzed Victim. Under
> such circumstances, it was permissible for the jury to infer that
> [Appellant] had a guilty conscience. If in fact there were other
> possible explanations for [Appellant's] flight, [Appellant] was at
> liberty to provide those explanations to the jury and we clearly
> communicated this to [Appellant's] counsel. Ultimately, we
> determined that it was for the jury to decide whether flight
> occurred and, if so, how flight should be considered.

Trial Court Opinion, pp. 15-16.

We discern no abuse of discretion in the trial court's admission of flight

evidence. We further conclude that the trial court properly instructed the

jury regarding its consideration of the evidence of flight.[5] Accordingly,

Appellant's flight-related evidentiary and jury charge claims fail.

_____

[5] At the end of the trial, the court instructed the jury:

> Now in this case you heard some evidence that could possibly
> lead you to believe that [Appellant] fled after this crime
> occurred. It's up to you to decide whether [Appellant] fled or he
> did not flee. That's your decision. If you find that [Appellant]
> fled after the crime was committed, that is evidence of what the
> law terms consciousness of guilt. The law recognizes that people
> who are guilty will have a tendency to run away and flee after
> they commit something that they knew was wrong. And you can

*(Footnote Continued Next Page)*

- 13 -

Appellant also claims that the trial court erred by precluding defense counsel from drawing a direct link in closing between Anthony DeJesus' aggravated assault and person not to possess firearms convictions and a suggestion that Anthony DeJesus was the shooter in this case. *See* Appellant's Brief, pp. 15. Appellant is again incorrect.

At trial, Anthony DeJesus testified that he was then incarcerated for convictions on two counts of aggravated assault and persons not to possess firearms. *See* N.T. 8/8&9/2013, p. 169. Prior to closing arguments, the Commonwealth moved the trial court to preclude defense counsel from arguing that Anthony DeJesus, by virtue of his convictions, was more likely than Appellant to have committed the crime in the instant matter. *See* N.T. 8/8&9/2013, pp. 203-207. The court granted the Commonwealth's motion, stating:

---

*(Footnote Continued)* _____

use [Appellant's] flight as evidence of his guilty [conscience] if you find that he fled. However, the law also recognizes that there are other reasons beyond a reasonable doubt that could lead a person to try to avoid the police. You must consider all of the evidence. You must decide whether in fact this [Appellant] did flee and if you find that he fled whether he did so out of guilty [conscience] or for some other reason having nothing to do with this crime. But if you find that he did flee and you find that he did so because of a guilty [conscience] you can consider that as evidence in this case.

N.T. 8/8&9/2013, pp. 249-250. When read as a whole, this instruction clearly, adequately, and correctly advised the jury that it could consider the evidence of flight as demonstrating Appellant's consciousness of guilt, but that it was not required to do so.

I'm not going to let [defense counsel] draw a direct link between the firearms conviction and this event because the evidence does not establish any such link. So I'm not going to allow [defense counsel] to specifically say Anthony DeJesus did this because he did it in the past.

N.T. 8/8&9/2013, p. 206.

Initially, we note that defense counsel did not lodge an objection to the trial court's ruling limiting the defense closing regarding the use of Anthony DeJesus' criminal record, and, accordingly, Appellant waived this claim. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 84 (Pa.2008) ("the absence of a specific contemporaneous objections renders the appellant's claim waived."). Further, because no trial testimony or evidence placed a weapon in Anthony DeJesus' hands on the evening in question, we agree with the trial court's assessment that the evidence presented did not warrant an argument relating in any way to Anthony DeJesus' prior convictions. Additionally, because Pennsylvania's Rules of Evidence expressly state that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" such argument in closing would have been improper. Pa.R.E. 404(b). Accordingly, we discern no abuse of discretion in limiting defense counsel's use of Anthony DeJesus' criminal convictions in his closing argument.[6]

_____

[6] We note that the trial court did not bar defense counsel from suggesting that Anthony DeJesus, or any individual whom the evidence indicated was

*(Footnote Continued Next Page)*

- 15 -

Finally, Appellant claims the trial court erred in sentencing him to the top of the standard range of the sentencing guidelines and running the sentence consecutive to Appellant's sentence in another matter. **See** Appellant's Brief, pp. 16-17.

This claim raises a challenge to the discretionary aspects of Appellant's sentence. "Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Allen**, 24 A.3d at 1064.

Appellant in the present case filed a timely notice of appeal, and preserved his issues in a motion for reconsideration of sentence. Further,

_(Footnote Continued)_ ───────────

present on the night in question, committed the crime. **See** N.T. 8/8&9/2013, p. 203. The trial court merely precluded counsel from arguing that Anthony DeJesus' prior convictions could be viewed as proof that he had committed the crime. **See** N.T. 8/8&9/2013, pp. 204-207.

- 16 -

Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief, p. 9. Accordingly, we now determine whether Appellant has raised a substantial question for review and, if so, proceed to a discussion of the merits of the claim. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa.1987).

In his Pa.R.A.P. 2119(f) statement, Appellant alleges that the trial court imposed an unreasonable sentence because it based the sentence solely on defendant's lack of remorse at sentencing. *See* Appellant's Brief, p. 9.[7] Importantly, Appellant does not argue that the sentencing court relied upon any impermissible factors in sentencing, relied solely on the severity of the crime committed,[8] or sentenced him beyond statutory limits. Instead,

---

[7] We note that the trial court sentenced Appellant in another matter, Docket CP-38-CR-175-2013, on August 28, 2013 as well. Appellant herein also claims that the trial court erred in deciding to run his 1 to 5 year sentence in the case consecutive to the 20 to 40 year sentence in the instant case. Because the trial court ordered Appellant to serve the sentence in this case first, no claim exists that the court erred in sentencing on this matter consecutive to another sentence. We note, however, that even if the sentence order was reversed, and the instant sentence were to be served consecutive to the 1 to 5 year sentence in Docket CP-38-CR-175-2013, such a claim would not raise a substantial question for our review. *See Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa.Super.2005) (a claim that the consecutive nature of sentences violates the Sentencing Code fails to raise a substantial question for review).

[8] We note that a claim that a sentencing court relied solely on the severity of the crime raises a substantial question for review. *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa.Super.2009).

he alleges that the sentencing court focused solely on his lack of remorse at the sentencing hearing in imposing sentence. *Id.* To the extent Appellant's claim is that the trial court viewed his silence at sentencing as a lack of remorse and relied solely on that silence in sentencing, this claim does raise a substantial question for appellate review. *See Commonwealth v. Bowen*, 975 A.2d 1120 (Pa.Super.2009). We will therefore address the merits of Appellant's discretionary aspects of sentencing claim.

> If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Malovich*, 903 A.2d 1247, 1252-53 (Pa.Super.2006) (citations omitted).

Our review of the sentencing transcript reveals that the lower court did not abuse its discretion. Instead, the trial court imposed a sentence that was consistent with the protection of the public, took into account the gravity of the offense as it related to the impact on the life of the victim and on the community, and considered the Appellant's rehabilitative needs, as required by 42 Pa.C.S. § 9721(b).

At sentencing, the trial court explained it considered the presentence investigative report,[9] the nature of Appellant's actions, the consequences of Appellant's actions (including the victim's injuries), the efforts of Appellant and his friends to cover up the crime and thwart the police investigation, the continuing danger Appellant presents to society, the arguments of counsel, and the testimony received at the sentencing hearing. N.T. 8/28/2013, pp. 7-14. Finally, the court sentenced Appellant to a standard range sentence within the statutory maximum.[10] *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super.2010) ("[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."). We find no abuse of discretion.

Given the foregoing, Appellant's claim that the trial court relied solely on his lack of remorse in sentencing fails.

Judgment of sentence affirmed.

---

[9] We note that, where a sentencing court had the benefit of a presentence investigation report, we can assume the sentencing court was aware of relevant information contained therein and weighed that information along with any mitigating factors. *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super.2010).

[10] The upper level of the sentencing guidelines' standard range for attempted murder involving serious bodily injury is the statutory limit regardless of an offender's prior record score. *See* 204 Pa.Code § 303.16. The statutory maximums for first degree murder, second degree murder, and third degree murder are death sentence/life imprisonment, life imprisonment, and 40 years, respectively. *See* 18 Pa.C.S. § 1102.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2014