J-S14043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KALIF V. GANT, | : | |
| | : | |
| Appellant | : | No. 1303 EDA 2014 |

Appeal from the PCRA Order entered on April 10, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0202541-2006

BEFORE:  DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 16, 2015**

Kalif V. Grant ("Grant") appeals the Order dismissing his Petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  Additionally, Grant's appellate counsel, Todd Mosser, Esq. ("Attorney Mosser"), has filed a separate Petition to Withdraw as Counsel.  We grant Attorney Mosser's Petition to Withdraw as Counsel, and affirm the Order of the PCRA court.

In its Opinion, the PCRA court set forth the relevant factual and procedural history, which we incorporate herein by reference.  **See** PCRA Court Opinion, 5/23/14, 1-4.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

As an addendum, on November 19, 2014, Attorney Mosser filed a "no-merit" letter pursuant to **Turner**/**Finley**,[2] along with a Petition to Withdraw as Counsel.

Initially, we must address Attorney Mosser's Petition to Withdraw as Counsel. Where counsel seeks to withdraw on collateral appeal, the procedure outlined in **Turner**/**Finley** must be followed. In **Commonwealth v. Pitts**, 981 A.2d 875 (Pa. 2009), our Supreme Court explained that independent review by competent counsel is required before withdrawal is permitted. **Id.** at 876 n.1. Such review requires proof of the following:

1. [a] "no-merit" letter by [] counsel detailing the nature and extent of his review;

2. the "no-merit" letter by [] counsel listing each issue the petitioner wished to have reviewed;

3. [C]ounsel's "explanation," in the "no-merit" letter, of why the petitioner's issues were [without merit];

4. The PCRA court conducting its own independent review of the record; and

5. The PCRA court agreeing with counsel that the petition was [without merit].

**Id.** (citation and brackets omitted).

Further, we have held that the Supreme Court in **Pitts** did not expressly overrule the additional requirement imposed by this Court in

---

[2] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

***Commonwealth v. Friend***, 896 A.2d 607, 615 (Pa. Super. 2006), stating that

> counsel seeking to withdraw [must] contemporaneously forward to the petitioner a copy of the application to withdraw that includes (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*, or with the assistance of privately retained counsel.

***Commonwealth v. Widgins***, 29 A.3d 816, 818 (Pa. Super. 2011).

Here, Attorney Mosser filed a ***Turner/Finley*** no-merit letter and a Petition to Withdraw as Counsel. In his Petition, Attorney Mosser described the extent of his review, identified the issues that Grant sought to raise, and explained why the issues lack merit. In addition, Attorney Mosser provided Grant with notice of his intention to seek permission to withdraw from representation, a copy of the no-merit letter, and advised Grant of his rights in lieu of representation.[3] Thus, we conclude that Attorney Mosser has substantially complied with the requirements necessary to withdraw as counsel. We now independently review Grant's claims to ascertain whether they are without merit.

On appeal, Grant raises the following questions for our review:

1. Whether trial counsel was ineffective for failing to convey a plea offer to Grant?

---

[3] Attorney Mosser's Petition to Withdraw as Counsel, as originally filed, failed to include any proof that he had provided Grant with copies of the no-merit letter and Petition to Withdraw. Accordingly, we ordered Attorney Mosser to provide this Court with such proof, which he did.

- 3 -

2. Whether trial counsel was ineffective for failing to move to set aside the verdict?

3. Whether trial counsel was ineffective for failing challenge the sufficiency of the evidence?

4. Whether trial counsel was ineffective for failing to challenge the weight of the evidence?

***Turner/Finley*** Letter at 10, 12 (unnumbered).[4]

> This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence.

***Commonwealth v. Ortiz***, 17 A.3d 417, 420 (Pa. Super. 2011) (citations omitted).

---

[4] In his no-merit letter, Attorney Mosser also addresses several claims initially raised by Grant in his *pro se* PCRA Petition and *pro se* Supplemental PCRA Petition, which were filed prior to the appointment of PCRA counsel and the filing of a counseled Amended PCRA Petition. Because these additional claims were not included in the counseled Amended PCRA Petition filed by PCRA counsel, or addressed by the Commonwealth in its Motion to Dismiss Grant's PCRA Petition, they do not appear to have been considered by the PCRA court as a basis for its decision to dismiss Grant's PCRA Petition without a hearing. ***See*** Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."); ***see also Commonwealth v. Roney***, 79 A.3d 595, 611 (Pa. 2013) (holding that issues not presented to the PCRA court are waived). Notwithstanding, in its Pa.R.A.P. 1925(a) Opinion, the PCRA court thoroughly addressed these additional claims, set forth the relevant law, and determined that they lack merit. ***See*** PCRA Court Opinion, 5/23/14, 13-20. We agree with the rationale of the PCRA court. Thus, even if these claims were not waived, we would have concluded that they lack merit.

In his first issue, Grant contends that trial counsel was ineffective for failing to convey a plea offer to him. ***Turner***/***Finley*** Letter at 10.

In its Opinion, the PCRA court addressed Grant's first claim, set forth the relevant law, and concluded that it lacks merit. ***See*** PCRA Court Opinion, 5/23/14, 5-8. We agree with the sound reasoning of the PCRA court and affirm on this basis as to this issue. ***See id***.

In his second claim, Grant claims that trial counsel was ineffective for failing to move to set aside the verdict. ***Turner***/***Finley*** Letter at 12. In his third claim, Grant claims that appellate counsel was ineffective for failing to appeal his judgment of sentence on the basis that the evidence was insufficient to support his convictions. ***Id***. at 12-14.

In its Opinion, the PCRA court addressed Grant's second and third claims, and concluded that they lack merit. ***See*** PCRA Court Opinion, 5/23/14, 8-11. We agree with the sound reasoning of the PCRA court and affirm on this basis as to these issues. ***See id***.

In his final claim, Grant claims that appellate counsel was ineffective for failing to appeal his judgment of sentence on the basis that the verdict was against the weight of the evidence. ***Turner***/***Finley*** Letter at 14.

In its Opinion, the PCRA court addressed Grant's final claim and concluded that it lacks merit. ***See*** PCRA Court Opinion, 5/23/14, 11-13. We agree with the sound reasoning of the PCRA court and affirm on this basis as to this issue. ***See id***.

Based upon the foregoing, we conclude that Grant's PCRA Petition is without merit, and allow Attorney Mosser to withdraw from representation.

Petition to Withdraw as Counsel granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2015

## IN THE COURT OF COMMON PLEAS
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :   CP-51-CR-0202541-2006

        v.

KALIF GANT



CP-51-CR-0202541-2006 Comm. v. Gant, Kalif
Opinion

7154167631



FILED

MAY 2 3 2014

Criminal Appeals Unit
First Judicial District of PA

**OPINION**

**McDermott, J.**                                  **May 23, 2014**

### Procedural History

On April 2, 2007, after a trial presided over by Honorable Renee Cardwell Hughes, a jury found petitioner guilty of Third Degree Murder and related charges. On May 22, 2007, the Judge Hughes sentenced the defendant to forty to eighty years of imprisonment.

On June 13, 2007, the petitioner filed a Notice of Appeal. On July 3, 2008, petitioner filed a *pro se* Post Conviction Relief Act (PCRA) petition, which was dismissed on November 10, 2008 as petitioner's direct appeal was still pending.

On September 21, 2009, the Superior Court of Pennsylvania affirmed the petitioner's judgment of sentence. The Superior Court rejected petitioner's claims that: 1) the prosecutor made improper comments during his closing argument; 2) the trial court erred in instructing the jury regarding reasonable doubt; 3) the trial court erred in giving a consciousness of guilt charge, and; 4) the trial court abused its discretion in sentencing petitioner. On July 30, 2010, the Supreme Court of Pennsylvania denied petitioner's Petition for Allowance of Appeal.

On April 21, 2011, petitioner filed a *pro se* PCRA petition. On July 29, 2011, petitioner filed a second *pro se* petition. On August 30, 2012, counsel was appointed to represent petitioner for purposes of his PCRA. On July 9, 2013, private counsel hired by petitioner entered her appearance to represent the petitioner on his PCRA. On September 13, 2013, PCRA counsel filed an amended PCRA petition styled as a "Supplemental PCRA Petition." On December 3, 2013, the Commonwealth filed a Motion to Dismiss. On February 28, 2014 and April 10, 2014, this Court held evidentiary hearings. On April, 10, 2014, this Court dismissed petitioner's PCRA. On April 25, 2014, petitioner filed a Notice of Appeal.

## Facts

The Superior Court of Pennsylvania recounted the facts of this case as follows:

> On April 29, 2005, Kalif Gant[, petitioner,] and several co-conspirators planed to rob Christopher Jones [] during the course of a drug deal. (N.T. 3/30/07, pgs. 42-43). The drug transaction was to take place in Progress Plaza, located near the intersection of Oxford and Broad Streets in the City and County of Philadelphia.[1] *Id.* The [petitioner] arrived at the Plaza with Melvin Birdsong ("Birdsong") in a blue Oldsmobile, where they met Jereese Brown ("Brown") and Bilal Reed ("Reed), who arrived in a silver Pontiac. Id. [Petitioner,] Reed, and Brown exited their cars and hid in an alleyway alongside the vacant supermarket. *Id.* Birdsong got into the silver Pontiac and drove to the other end of the parking lot. *Id.* Jones entered the backseat. *Id.* Appellant and Reed walked out of the alley with guns and approached the rear window of the car. *Id.* at 46.
>
> Moments later, multiple gunshots were fired from the direction of the Plaza. (N.T. 3/29/07, pg. 142; 153; 3/30/07. pg. 18). The [petitioner] ran up Park Avenue towards 13th Street and collapsed halfway up the street. (N.T. 3/29/07, pg. 143-145; 3/30/07, pgs. 18-24). A second male came from the direction of the Plaza, knelt down and removed something from [petitioner's] face, and continued running. (N.T. 3/29/07, pgs. 145-146; 155). As police converged on the scene, Birdsong and Brown drove the blue Oldsmobile around the corner and attempted to lift [petitioner] into the car. (N.T. 3/29/07, pgs. 147-150).

---

[1] The footnotes from the Superior Court opinion have been omitted.

A police officer found Birdsong and Brown struggling to assist [petitioner]. (N.T. 3/29/07, pg. 180). The officer told the two men to lay [petitioner] on the backseat of her patrol car so he could be transported quickly to the hospital. (N.T. 3/29/07, pgs. 180-181). The two men were nervous and apprehensive, but did assist the officer. *Id.* After [petitioner] was secured in the car, the officer instructed Birdsong and Brown to follow her to the hospital. (N.T. 3/29/07, pg. 184). The two men followed the officer to the end of the block, turned the corner and sped away. (N.T. 3/29/07, pgs. 185; 202).

The police converged on Progress Plaza where they found Christopher Jones bleeding and unresponsive. (N.T. 3/29/07, pg. 184). Before police arrived on the scene, a bystander approached Jones to ask who shot him. (N.T. 3/30/07, pgs. 9-10). Jones responded that his name was "Chris" and that his chest hurt. *Id.* Jones was alive and breathing for approximately five (5) to ten (10) minutes after the shooting. (N.T. 3/29/07, pg. 233). He was taken by ambulance, and was pronounced dead at Hahneman Hospital moments after his arrival. (N.T. 3/29/07, pgs. 237). Christopher Jones sustained two (2) gunshot wounds to the back. (N.T. 3/29/07, pgs. 231; 237). Police recovered a Tech-22 and .32 caliber revolver with three (3) spent (fired) rounds; both of which were found just outside the Plaza. (N.T. 3/29/07, pgs. 64-65; 70; 76; 77). A pair of black cloth gloves, and three (3) bandana's – one of which had holes cut into it – were also found at the Plaza. *Id.* Droplets of blood were found approximately twenty (20) feet from where the weapons were recovered. (N.T. 3/29/07, pgs. 65; 69; 70). Broken car glass was also recovered on the ground [where] Jones' body was found. *Id.*

The silver Pontiac Bonneville was found near 10th Street. Reed and Brown's fingerprints were lifted from the interior and exterior of the car. (N.T. 3/29/07, pgs. 106; 110; 134; 3/30/07, pg. 51). The rear window of the Pontiac was shot out and there was glass fragments on the back seat, and a red stain on the bottom of the rear passenger door. (N.T. 3/29/07, pg. 107). The car was located approximately forty-five (45) feet from where a .32 revolver was discarded in an alleyway. (N.T. 3/29/07, pg. 127). After securing a search warrant, police also seized $214 in cash, and 132 packets of crack cocaine from the trunk. (N.T. 3/30/07, pg. 50).

The [petitioner] sustained a gunshot wound to his neck. (N.T. 3/29/07, pgs. 166-169). At the hospital, police recovered a bullet removed from [petitioner] following surgery; [petitioner's] sweatshirt, which had a bullet hole in the left collar, and a folded up bandana that had two (2) bullet holes in it. *Id.* The location of the bullet holes in the bandana was consistent with the bandana

3

having been folded in a triangular shape and worn as a mask when [petitioner] was shot. (N.T. 3/30/07, pgs. 118-130).

On June 20, 2005, [petitioner] gave a statement to police at his home concerning the shooting death of Christopher Jones. (N.T. 3/30/07, pgs. 31-33). [Petitioner] admitted that he was at Progress Plaza on the evening of April 29, 2005 with Brown[,] Reed, Birdsong, and Jones. (N.T. 3/30/07, pgs. 42-47). He also admitted to "hiding" in an alleyway with Reed next to the vacant supermarket as Jones approached the Plaza. (N.T. 3/30/07, pgs. 46-47).

After further investigation, police issued an arrest warrant for [petitioner]. (N.T. 3/30/07, pg. 55). [Petitioner] eluded police for approximately six (6) weeks. (N.T. 3/30/07, pgs. 66-71; 74-75). At the time of his apprehension, [petitioner] gave the police a false name. *Id. Commonwealth v. Gant*, 1612 EDA 2007 (Pa. Super. September 21, 2009)(Non-precedential decision).

## Issues

In the amended petition PCRA counsel raises the following issues:

1. Trial counsel was ineffective for failing to convey the offer to petitioner.

2. Trial counsel was ineffective for failing to move to set aside the verdict.

3. Appellate counsel was ineffective for failing to allege a sufficiency of the evidence claim as to both charges.

4. Appellate counsel was ineffective for failing to argue that the verdict was against the weight of the evidence.

As a preliminary matter, this Court must address the timeliness of the petition.

A PCRA petition must be filed within one year of the date that the judgment becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). On July 30, 2010, the Supreme Court of Pennsylvania denied petitioner's Petition for Allowance of Appeal and on April 21, 2011, petitioner filed his *pro se* petition. Thus, the petition is timely.

4

To warrant relief based on a claim of ineffective assistance of counsel, a defendant must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to be effective. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195-96 (Pa. 2012)(citation omitted). To overcome the presumption, the petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania has applied the *Strickland* test by looking to three elements, whether: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Bennett*, 57 A.3d at 1195-96 (*citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). If a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Bennett*, 57 A.3d at 1195-96.

An adequate and properly layered claim must contain more than boilerplate assertions of prior counsel's ineffectiveness, because "[s]uch an undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief." *Commonwealth v. Rivera*, 816 A.2d 282, 287 (Pa. Super. 2003)(citations omitted).

Petitioner alleges that trial counsel failed to convey a plea offer to the petitioner. An attorney has a duty to communicate a plea offer to his client and to explain the advantages and disadvantages of the offer. *Commonwealth v. Marinez*, 777 A.2d 1121, 1124 (Pa. Super. 2001). As a general rule, defense counsel has the duty to communicate formal offers from the

5

prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Missouri v. Frye*, 132 S. Ct. 1399, 1408, 182 L. Ed. 2d 379 (2012)(holding counsel rendered ineffective assistance for failing to convey a plea offer to appellant before it expired). Failure to do so may be considered ineffectiveness of counsel if the defendant is sentenced to a longer prison term than the term he would have accepted under the plea bargain. *Id.(citing Commonwealth v. Korb*, 617 A.2d 715, 716 (Pa. Super. 1992)); *see Commonwealth v. Copeland*, 554 A.2d 54, 60–61 (Pa. Super. 1988). In order to be entitled to relief, the petitioner has the burden of proving that: (1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the plea offer; and (4) he was prejudiced thereby. *Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa. Super. 2005)(*citing Copeland*, 554 A.2d at 60-61)).

Here, petitioner cannot establish three of the prongs required by *Copeland* and its progeny. This Court finds that a plea offer contingent upon cooperation from the petitioner was made and conveyed to the petitioner by Mr. Joseph Santaguida. Assistant District Attorney John Doyle credibly testified that he conveyed an interest in having the petitioner cooperate with the Commonwealth to aid in the prosecution of Reed. N.T. 2/28/2014 at 49-51. Because the petitioner, through his attorney refused to cooperate no specific offer of a number of years was ever conveyed to the petitioner. *Id.* This Court rejects petitioner's assertion that an offer of five years was ever made. N.T. 2/28/2014 at 27. Mr. Santaguida credibly testified that if an offer of cooperation had been made he would have conveyed it to his client. N.T. 4/10/2014 at 17. Mr. Santaguida's file had an indication that the petitioner refused an offer of cooperation, although he did not have an independent recollection of such an offer. N.T. 4/10/2014 at 7.

6

The fact that an offer of cooperation was conveyed to and subsequently rejected by petitioner is supported by the record. On two occasions outside the presence of the petitioner, Judge Hughes, Mr. Santaguida, and ADA Doyle discussed the fact that an offer of cooperation had been made and rejected.[2] During trial, in the presence of the petitioner Judge Hughes referenced a plea deal.[3] At the mention of this deal, petitioner did not make any sort of showing that this was the first time he had heard of the offer; in fact he did not react at all. N.T. 4/2/2007 at 18; N.T. 2/28/2014 at 29.

The conclusion that an offer of cooperation was made and rejected by the petitioner is further supported by the letters written to Judge Hughes for petitioner's sentencing. The petitioner wrote a letter to Judge Hughes wherein the petitioner explained that he did not cooperate because his family had been threatened. Commonwealth PCRA Exhibit 1. Three of the petitioner's family members, Dorthea Miller, Amir Miller, and Ayesha Miller, corroborated petitioner's account in their letters wherein they indicated that they were aware that an offer involving cooperation had been made to petitioner. All three individuals insisted that the petitioner did not take the offer of cooperation because he and his family had been threatened. N.T. 2/28/2014 at 18-26. The evidence contained in the trial record in combination with the testimony from the PCRA hearings require the conclusion that an offer of cooperation was conveyed by Mr. Santaguida to petitioner and subsequently rejected by petitioner.

Finally, the petitioner has not met his burden of showing he was prejudiced even if the offer had not been conveyed. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants

---

[2] The Court: "The question I'm asking you is why this boy is not taking an offer."
Mr. Santaguida: "They didn't make an offer. They only made an offer if he cooperated." N.T. 3/28/2007 at 29.
The Court: "[I]t ain't my fault your boy didn't take third." N.T. 4/2/2007 at 196.
[3] The Court: "...which is why I don't understand why this young man didn't take the Commonwealth's offer, but that's water under the bridge now." N.T. 4/2/2007 at 18.

7

must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. *Missouri v. Frye*, 132 S. Ct. 1399, 1409, 182 L. Ed. 2d 379 (2012). Prior to trial, the petitioner never requested an offer; instead he continued to assert his innocence even after being convicted. N.T. 2/28/2014 at 39-40. At the evidentiary hearing on his PCRA, petitioner testified that he would have *considered* cooperating with the Commonwealth, but he did not state that he would, in fact, have taken a deal that required cooperation. N.T. 2/28/2014 at 12-13. Therefore, petitioner has not shown that he was prejudiced, because there is no evidence he would have agreed to cooperation, followed through with the cooperation, or admitted his guilt. Accordingly, petitioner has failed to meet his burden proving trial counsel was ineffective for failing to convey a plea offer.

Petitioner claims that trial counsel was ineffective for failing to "move to set aside the verdict given that there was no independent evidence to support said charge" and that appellate counsel was ineffective for failing to "allege that the evidence was insufficient to support the convictions on both charges." Petitioner alleges that there was no direct evidence tying him to the robbery or the homicide.

Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006)(*citing Commonwealth v. Hall*, 701 A.2d 190, 203 (Pa. 1997)). Appellate counsel cannot be found to be ineffective for failing to raise meritless claims. *Commonwealth v. Tanner*, 600 A.2d 201, 206 (Pa. Super. 1991)(*citing Commonwealth v. Hubbard*, 472 Pa. 259, 278, 372 A.2d 687, 696 (1977)).

There was sufficient evidence presented at trial to support the petitioner's convictions. In its 1925(b) Opinion the trial court explained:

> There was sufficient evidence for the fact finder to convict the
> appellant on the charge of third degree murder. To find a defendant

8

guilty of third degree murder, the Commonwealth need not show specific intent, but merely that the defendant acted with malice aforethought; wanton and reckless conduct that manifests extreme indifference to the value of human life. *Commonwealth v. Santos,* 876 A.2d 360 (Pa. 2005). Although it may not have been the perpetrator's purposeful intent to kill a particular person, at the very least, the defendant's conduct must be such that one could anticipate death or serious bodily injury would likely result. Further, malice may be inferred from a consideration of the facts and circumstances in its totality. *Commonwealth v. Commander,* 260 A.2d 773 (Pa. 1970).

Appellant asserts that he was not the shooter, and therefore, cannot be convicted of third degree murder. The appellant was convicted of murder via the principal of accomplice liability.[4] Under the theory of accomplice liability, the actor and his accomplice share equal responsibility for the commission of a criminal act. *Commonwealth v. Bradley,* 392 A.2d 688 (Pa. 1978). Two prongs must be satisfied for a defendant to be found guilty as an accomplice – first, there must be evidence that the defendant intended to aid of promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principle. *Commonwealth v. Murphy,* 844 A.2d 1228 (Pa. 2004).

These two prongs can be established through circumstantial evidence. *Id.* The appellant and his accomplices consciously acted in concert to ambush Christopher Jones during a drug deal. (N.T. 3/30/07, pgs. 42-43). The appellant; Reed and Brown hid in a nearby alleyway as Jones was driven to them in the back seat of the silver Pontiac. *Id.* The appellant and his accomplices emerged from the alley wearing masks and brandishing firearms. (N.T. 3/30/07, pgs. 46). After several shots were fired, Jones was found lying in the Plaza face down with two (2) bullet wounds to the back. (N.T. 3/29/07, pgs. 207-209). Reed and Brown's fingerprints were lifted from the interior and exterior of the silver Pontiac, which was found approximately three (3) blocks from Progress Plaza. (N.T. 3/29/07, pgs. 104; 112). The rear window of the vehicle was shot out, with glass fragments found on the back seat and a red stain on the bottom of the rear door. (N.T. 3/29/07, pg. 107). In addition, the appellant admitted to police that he was in Progress Plaza the night Jones was killed for the purpose of robbing Jones. He waited in an alley with his accomplices to commit the crime. (N.T. 3/30/07, pgs. 42-43). The Commonwealth is not required to prove that it was the appellant who fired the gun that killed the victim. The principle and his accomplice share equal responsibility for the commission of a criminal act. *See, Murphy,*

---

[4] The footnotes from the trial court opinion have been omitted.

9

*supra.* Appellant was a full and active participant in the killing of Christopher Jones and thus shares the liability for his death.

Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice; malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. *Commonwealth v. Tielsch,* 934 A.2d 81 (Pa. Super. 2007). The essential element of third degree murder is malice. *See, Santos, supra.* The use of a deadly weapon on a vital part of the body is sufficient to support a finding of malice. *See, Commonwealth v. Murphy,* 739 A.2d 141 (Pa. 1999). Jones was shot in the back with the bullets striking vital organs. (N.T. 3/29/07, pgs. 233). Malice is thus established.

The appellant evidence the requisite malice necessary for third degree murder when he intentionally participated in an ambush of Jones brandishing a loaded firearm. Third degree murder requires no *specific* intent to kill. *Commonwealth v. DiStefano,* 787 A.2d 574 (Pa. Super. 2001). Appellant's *conduct* was such that one could anticipate that death or serious bodily injury would likely result after the appellant and his accomplices emerged from the alleyway with firearms and shot at Jones. The elements of third degree murder are satisfied.

b.) Conspiracy

There was sufficient evidence for the fact finder to convict the appellant for the crime of conspiracy. In order sustain a conviction for criminal conspiracy, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person(s), (2) with a shard criminal intent and, an overt act was done in furtherance of the conspiracy." *Commonwealth v. Johnson,* 719 A2.d 778 (Pa. Super. 1998), *citing Commonwealth v. Rios,* 684 A.2d 1025, 1030 (Pa. 1996), *cert denied,* 520 U.S. 1231 (1997). Therefore, a conviction for conspiracy "requires proof of the existence of a shared criminal intent." *Johnson, supra, citing Commonwealth v. Sattazahan,* 631 A.2d 597, 602 (Pa. Super. 1993)[appeal denied, 652 A.2d 293 (1994)]. A conspiracy can be "extracted from the circumstances that attend its activities."*Johnson, supra, citing Commonwealth v. Kennedy,* 453 A.2d 927, 929 (Pa. 1982). As a result, the "conduct of the parties and the circumstances surrounding their conduct may create a 'web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. McKreever,* 689 A.2d 272, 274 (Pa. Super. 1997).

The appellant admitted his involvement in the conspiracy to rob Christopher Jones at gunpoint. (N.T. 3/30/07, pgs. 42-47). The

10

physical evidence corroborated the conspiracy. No error exists on this record.

### c.) Robbery

The evidence was sufficient to sustain a conviction for robbery. A robbery is committed, if, in the course of committing a theft, one "threatens another with or intentionally puts him in fear of immediate serious bodily injury." *Commonwealth v. Natividad,* 773 A.2d 167 (Pa. 2001); *see also,* 18 Pa.C.S.A § 3701. A conviction for robbery does not required proof of a completed theft, it requires only that the requisite force was used "in the course of committing a theft," which is statutorily defied as "an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A § 3701(a)(2). The evidence established that after Jones arrived a Progress Plaza to conduct a drug deal, the appellant and his accomplices emerged from hiding the approached Jones wearing masks and bearing firearms. (N.T. 3/30/07, pgs. 42-46). The Commonwealth was not required to establish that a completed theft took place that evening, rather, the evidence was sufficient to establish that force was used to attempt to perpetuate a theft. There was sufficient evidence to sustain the conviction for robbery.

The verdict was grounded on the total record which is more than sufficient to establish all the necessary elements of the aforementioned crimes. The sufficiency of f the evidence supported, rather than contradicted the verdicts rendered. The conclusion reaches was well within the reasonable bounds of the jury's discretion.

This Court finds the trial court's reasoning sound. The evidence is sufficient to support the petitioner's convictions. Accordingly, neither trial counsel nor appellate counsel was ineffective for failing to challenge the sufficiency of the evidence.

Petitioner alleges that appellate counsel was ineffective for failing to "argue that the weight of the evidence failed to support a conviction." Petitioner argues that the petitioner was never observed to be in possession of a firearm nor was he observed in the same area where the homicide occurred. Weight of the evidence and sufficiency of the evidence are discrete inquiries. An argument that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the

11

weight of the evidence. *Commonwealth v. Davis,* 799 A.2d 860, 865 (Pa. Super. 2002). An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Dupre,* 866 A.2d 1089, 1101 (Pa. Super. 2005)(*citing Commonwealth v. Sullivan,* 820 A.2d 795, 805-806 (Pa. Super. 2003); *Commonwealth v. Widmer,* 744 A.2d 745, 751-752 (Pa. 2000). "The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Diggs,* 949 A.2d 873, 879 (Pa. 2008).

The Superior Court has explained that the test is whether the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan,* 820 A.2d 795, 806 (Pa. Super. 2003). For one to prevail on a challenge of the weight of the evidence, the jury's verdict must be so contrary to the evidence as to shock one's sense of justice. *Id.* (*citing Commonwealth v. Goodwine,* 692 A.2d 233, 236 (Pa. Super. 1997)).

Petitioner's claim must fail as the evidence presented at trial was overwhelming as to his guilt. The petitioner was shot and found at the scene of the murder by Police Sergeant Saundra Russell. Petitioner's co-conspirators fled the scene of the murder upon the arrival of Sergeant Russell, demonstrating their consciousness of guilt. N.T. 3/29/2007 at 180-185, 202.

The petitioner admitted to participating in a conspiracy to rob Jones. N.T. 3/30/2007 at 32-49. In his statement to police, the petitioner stated that he went to the scene with Birdsong and that he hid in an alley with Reed, whom he knew had a firearm. *Id.* at 46. The petitioner admitted that his role in the robbery was to open the back car door and take whatever he found there during the drug sale. The petitioner explained that he was shot by the backseat passenger during the robbery. After the murder, the petitioner demonstrated a consciousness of guilt when

12

he evaded arrest for five weeks and when he was found he falsely identified himself at "Kevin Smith." *Id.* at 65-75.

The physical evidence supports the contention that the victim was killed in a robbery committed by three or more persons. Officers recovered a Tech .22 caliber semi-automatic weapon, a loaded Tech .32 caliber weapon that had been fired three times, three face masks, a blue and white bandana, a black bandana, and gloves. N.T. 3/29/2007 at 64-77, 127. Officers also found a Pontiac Bonneville registered to Brown, whose rear passenger window had been shattered by gunshots and contained $214 U.S. Currency and 132 packets of crack cocaine. N.T. 3/29/2007 at 107; N.T. 3/30/2007 at 50. The bandana the petitioner was wearing upon arriving at the hospital had two bullet holes that were consistent with having been folded into a triangular shape and worn as a mask when he was shot. N.T. 3/30/2007 at 118-130. This Court's conscience is not shocked where the evidence presented was overwhelmingly in favor of conviction.

In his *pro se* petition petitioner raises the following issues which were not addressed by PCRA counsel:[5]

> 1. "Was trial counsel ineffective for failing to object to the hearsay testimony of the coroner who did not perform the autopsy on the victim and only read from the report, thus depriving petitioner of the right to confront his accuser, in violation of both the Pennsylvania Constitution, Article 1, Section 9, an d, United States Constitution, Amendment 5, as they pertain to 'Due Process.'"
>
> 2. Was trial counsel ineffective for failing to bring forth an expert witness to impeach the commonwealth's expert witness, Mr. Emira, a forensic expert who gave testimony as to his theory that petitioner was wearing a bandana over his face at the time that he was shot; where said testimony was not based on scientific fact. Said ineffectiveness violates both the Pennsylvania Constitution, Article 1, Section 9, and, United States Constitution, Amendment 5, as they pertain to Due Process.

---

[5] PCRA counsel failed to address any of the claims raised by petitioner in his *pro se* petition other than the allegation that the plea offer was never conveyed as discussed *supra.*

13

3. Did trial counsel render ineffective assistance when he failed to object to the surprise evidence introduced during trial of a bandana allegedly worn by petitioner. The introduction of said evidence constitutes a violation of the Pennsylvania and United States Constitutions as they pertain to due process and in accords with *Brady v. Maryland*, 83 S.Ct. 1994 (1963).

4. Did trial counsel render ineffective assistance of counsel when he failed to object when the prosecution submitted facts to the jury during closing augments that were not in evidence during trial; and direct appeal counsel was ineffective for failing to raise this claim on direct appeal.

5. Did trial counsel render ineffective assistance of counsel when he failed to inform petitioner of a plea agreement offered by the prosecution prior to petitioner electing to go to trial. And direct appeal counsel was ineffective for failing to raise this claim on direct appeal.

6. Did the Commonwealth throughout trial, and during closing arguments, introduce facts not in evidence and therefore counsel was ineffective for failing to inform the jury of the fact that none of these alleged facts were supported by any evidence presented at trial.

7. Was trial counsel ineffective for failing to obtain petitioner's medical record in order to impeach the Commonwealth's witness who testified that at the time he took petitioner's statement the petitioner was in perfect heath, alert, and coherent.

8. Was trial counsel ineffective for failing to argue the admission of the bandana allegedly worn by the petitioner where the chain of custody was fatally compromised. And, was direct appeal counsel ineffective for failing to raise this claim on direct appeal.

After independent review, this Court finds petitioner's *pro se* claims to be without merit.

In his first allegation of error, petitioner claims that trial counsel was ineffective for failing to object to the hearsay testimony of the coroner who did not perform the autopsy on the victim as it violated his right to confrontation. Petitioner also asserts that appellate counsel was ineffective for failing to raise this issue on appeal.

A medical expert who did not perform the autopsy may testify as to cause of death as long as the testifying expert is qualified and sufficiently informed. *Commonwealth v. Ali*, 10 A.3d 282, 304-307 (Pa. 2010)(*citing Commonwealth v. Mitchell*, 570 A.2d 532 (Pa. Super. 1990); *Commonwealth v. Smith*, 391 A.2d 1009 (Pa. 1978)). In *Commonwealth v. Ali*, the

14

Supreme Court of Pennsylvania rejected appellant's claim that trial counsel was ineffective for failing to adequately challenge the Commonwealth's failure to produce at trial the medical examiner that performed the autopsy on the victim and drafted the autopsy report. The Court reasoned that Dr. Ian Hood was qualified to render an opinion on cause of death as well as viewed the victim's body personally and consulted with the medical examiner that performed the autopsy both before and after the autopsy itself. *Id.*

Here, although Dr. Feigin performed the autopsy, Dr. Ian Hood was present when the autopsy was conducted. N.T. 3/29/2007 at 228. At the time of trial, Dr. Feigin had left the medical examiner's office and had taken a job in New Jersey. *Id.* at 227-228. In addition to being present, Dr. Hood reviewed the report and factual findings of Dr. Feigin and independently arrived at his own determination of the cause of death. *Id.* at 228-229. This Court finds that Dr. Hood was qualified to testify as to his expert opinion. Petitioner failed to demonstrate how Dr. Feigin's testimony would have differed from that of Dr. Hood. Trial counsel was not ineffective for failing to object to Dr. Hood's testimony. Likewise, appellate counsel was not ineffective for failing to raise the issue on direct appeal.

Petitioner argues that trial counsel was "ineffective for failing to bring forth an expert witness to impeach the Commonwealth's expert witness, Mr. Emira, a forensic expert who gave testimony as to his theory that petitioner was wearing a bandana over his face at the time that he was shot; where said testimony was not based on scientific fact."

Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant. *Commonwealth v. Chmiel,*

15

30 A.3d 1111, 1143 (Pa. 2011)(*quoting Commonwealth v. Wayne*, 720 A.2d 456, 470 (Pa. 1998)). The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause. *Chmiel*, 30 A.3d at 1143 (citation omitted). Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution. *Chmiel*, 30 A.3d at 1143 (citations omitted).

A PCRA petition must include facts supporting petition and the place in the record where they appear; to extent they do not appear in record, petition must include affidavits, documents, and other evidence showing such facts. Pa.R.Crim.P. 902(A)12 and (D). Petitioner has not provided this Court with any evidence that an expert witness existed at the time of trial who would have contradicted Gamal Emira's testimony. Mr. Santaguida effectively cross-examined Emira on his conclusions. N.T. 3/30/2007 at 131-132. This claim is meritless.

Petitioner next claims that trial counsel was ineffective for failing to "object to the surprise evidence introduced during trial of a bandana allegedly worn by petitioner." The bandana was taken from the petitioner's person upon admission to the hospital. The petitioner was fully aware of what he was wearing the night of the murder and its potential use in his trial. Petitioner has not asserted that trial counsel requested the bandana and it was not disclosed by the Commonwealth. Accordingly, there was no violation of Pennsylvania Rule of Criminal Procedure 573. Petitioner has not alleged that the bandana was exculpatory, in fact the bandana was inculpatory; thus, there is no *Brady* violation. This claim is meritless.

16

Petitioner also claims that trial counsel was "ineffective for failing to argue the admission of the bandana allegedly worn by the petitioner where the chain of custody was fatally compromised" and appellate counsel was ineffective for failing to raise this claim on direct appeal. Petitioner alleges that the Commonwealth did not establish the chain of custody for the bandana because the items Detective Carroll testified to recovering from the hospital were inconsistent with the items listed in a document entitled "Patient's Possessions at the Time of Admission or at Time of Transfer."

Pennsylvania Rule of Evidence 901 provides "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This requirement is satisfied by testimony by a witness with knowledge that an item is what it is claimed to be or by distinctive characteristics of the item. Pa.R.E. 901(b). Detective Fran Carroll testified that on April 30th, 2005, he recovered clothing, including a bandana, collected by Temple University Hospital from the petitioner and placed the clothing on Property Receipt 2560697. N.T. 3/29/2007 at 167-169. At trial, Detective Carroll identified the bandana as the one he collected from the hospital. The chain of custody for this evidence was established. Trial counsel was not ineffective for refraining from objecting to this evidence. Appellate counsel was likewise not ineffective for failing to raise this claim on direct appeal.

Petitioner next claims trial counsel rendered ineffective assistance when he failed to object when the prosecution submitted facts to the jury during closing augments that were not in evidence during trial; and appellate counsel was ineffective for failing to raise this claim on direct appeal. Petitioner takes issue with the following statements by the prosecutor:

> The defendant goes on and says, and Mel wanted me to open the
> back door and take whatever was there from them. Well, he was

17

> obviously going to take something or he wouldn't need the masks
> and the guns, neither would the others. N.T. 4/2/2007 at 84.

> He goes to the Temple area with the three other men in two cars.
> He knows Bilal has a gun. He almost certainly has the Tech
> himself. N.T. 4/2/2007 at 89.

It is well-established that a prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks. *Commonwealth v. Hutchinson*, 25 A.3d 277, 306 (Pa. 2011). A prosecutor has reasonable latitude during his closing argument to advocate his case, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury. *Commonwealth v. Cox*, 983 A.2d 666, 687 (Pa. 2009)(*citing Commonwealth v. Abu–Jamal*, 720 A.2d 79, 110 (Pa. 1998)).

Reversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict. *Commonwealth v. Tedford*, 960 A.2d 1, 33 (Pa. 2008). The prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. *Commonwealth v. Gooding*, 649 A.2d 722, 727 (Pa. Super. 1994)(*citing Commonwealth v. D'Amato*, 526 A.2d 300, 309 (1987)).

Here, the prosecutor was within the bounds of permissible argument. Two firearms, three face masks, a blue and white bandana, a black bandana, and gloves were recovered from the scene of the murder. N.T. 3/29/2007 at 64-77, 127. It was a reasonable inference from the evidence that the petitioner was in possession of one of the firearms recovered. It is also a reasonable inference that the masks and firearms were used for the purpose of committing a robbery. These remarks represent fair comments on the evidence and were not objectionable. Accordingly, neither trial nor appellate counsel were ineffective for failing to challenge them.

18

Petitioner claims "the Commonwealth throughout trial, and during closing arguments, introduced facts not in evidence and therefore counsel was ineffective for failing to inform the jury of the fact that none of these alleged facts were supported by any evidence presented at trial." Petitioner contends that it was error for the prosecutor to argue that Birdsong, Brown, and Reed were the petitioner's co-defendants as there was no evidence presented at trial they committed any criminal acts.

The petitioner is mistaken in his characterization of the evidence. In his own statement to police, petitioner explained that Birdsong, Brown, Reed, and himself were all involved in a conspiracy to commit a robbery. N.T. 3/29/2007 at 41-47. Officers recovered a Tech .22 caliber semi-automatic weapon, a loaded Tech .32 caliber weapon that had been fired three times, three face masks, a blue and white bandana, a black bandana, and gloves. N.T. 3/29/2007 at 64-77, 127. Officers also found a Pontiac Bonneville registered to Brown, whose rear passenger window had been shattered by gunshots and contained $214 U.S. Currency and 132 packets of crack cocaine. N.T. 3/29/2007 at 107; N.T. 3/30/2007 at 50. It was proper for the prosecutor to argue that Birdsong, Brown, and Reed were uncharged co-conspirators of the petitioner and engaged in the criminal acts that resulted in the murder of Jones. The claim is meritless.

Petitioner claims trial counsel was "ineffective for failing to obtain petitioner's medical record in order to impeach the Commonwealth's witness who testified that at the time he took petitioner's statement the petitioner was in perfect heath, alert, and coherent." Petitioner also claims appellate counsel was ineffective for failing to raise the issue on direct appeal.

As discussed *supra*, a PCRA petition must include facts supporting petition. Pa.R.Crim.P. 902(A)12 and (D). Petitioner does not provide the medical records he asserts trial counsel failed to obtain. Petitioner fails to explain how these records would have impeached Detective James

19

McLaughlin's testimony nor even at the most basic level their admissibility at trial. Without the medical records this Court would need to invent a basis for impeachment and this Court refuses to do so. Trial counsel cross-examined Detective James McLaughlin regarding petitioner's medical condition when he gave his statement. N.T. 3/30/2007 at 56-62. Additionally, trial counsel had petitioner's grandmother testify as to petitioner's poor health at the time he gave the statement. N.T. 4/2/2007 at 31-34. This Court does not see what the medical records could have added to this point that trial counsel did not already elicit. This claim is meritless.

The petition does not meet the requirements of an ineffective assistance of counsel claim and does not merit substantive relief under the Post-Conviction Relief Act. For the foregoing reasons, the decision of this Court should be affirmed.

BY THE COURT,

Barbara A. McDermott, J.

20