SAYLOR, Judge:
This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County. Finding no abuse of discretion or error of law, we affirm.
On September 1, 1987, at 11:00 p.m., Marlene Fountain was coming out of her second floor apartment at 2238 N. 15th Street in Philadelphia when she saw Appellant, Carl Gooding, and David Lee struggling on the staircase with her landlord’s forty-one year old brother, Timothy Lynch. Fountain observed that both Appellant and Lee had handguns. Moments later she heard two shots and saw Appellant and Lee run out the front door. Fountain ran to Lynch’s aid while her daughter telephoned the police. *724 As Lynch lay dying from his gunshot wounds, he said, “Damn, they shot me.”
When the police arrived, they questioned Fountain about the incident. Fearing for the safety of herself and her children, Fountain insisted that she had not seen anything. On March 1, 1988, Fountain was persuaded by her brother to give the police a true statement. Fountain identified Appellant and Lee as the two men who shot and killed Lynch from a photographic array.
After shooting Lynch, Appellant and Lee fled to Wallace White’s apartment in New Jersey to hide and plan their escape to Florida. When Appellant and Lee arrived at White’s apartment, they started making telephone calls to see if they could go to Florida. Appellant was acting frantic and White asked Lee what was the matter with him. Lee told White to go into the bedroom and he would handle it. While in the bedroom, White overheard Appellant and Lee speak about shooting Lynch in Philadelphia. Lee said to Appellant, “Thanks for watching my back.” Appellant then made the following statements: “I shot the man. I am loyal to you (Lee) and I thought the man had a gun.”
When White observed that the two men had guns he asked them to leave his apartment. Several minutes later, Appellant and Lee returned to the apartment to use the phone and bathroom. Lee went into the bathroom which was located inside the bedroom. Several minutes later, White heard the sound of breaking glass coming from the bedroom. Lee had barricaded himself in the bedroom and it sounded like the bedroom was being tom apart. Appellant proceeded into the bedroom through the broken glass and debris and stumbled, setting off his gun.
At this point, Lee escaped out of the bedroom window onto the roof and Appellant took White hostage. Appellant placed his gun against White’s head and demanded that White knock on various apartment doors. At one door, tenant John Mentz, opened the door and Appellant pushed White aside and pointed his gun at Mentz. Mentz rushed at Appellant, they struggled, and Mentz was shot. White tried to flee, but Appellant pointed his gun at White and continued to hold him as a hostage.
In the meantime, the police had arrived and were focusing their attention on Lee, who was on the roof of the building. When Appellant heard the police coming, he tried to flee. Appellant stopped at the window of one of the apartments and tapped on it. The occupant, Lloyd Wallace, shouted at Appellant to go away. Appellant kicked in the window and came crashing inside. Wallace ran to get his gun and the two men tried to locate each other in the darkness. Wallace unsuccessfully fired a shot at Appellant and Appellant fired back, shooting Wallace in the face. Wallace shot into the darkness three more times and heard Appellant fall. At that point, Wallace exited his apartment through the window and was discovered by the police. The police ultimately captured and arrested Lee and Appellant. When Appellant was captured and commanded to drop to the ground, the police seized a .38 caliber pistol from under Appellant’s body.
On January 17, 1990, Appellant was convicted of murder in the first degree, criminal conspiracy, and possessing an instrument of crime. The jury could not reach a verdict during the penalty phase and therefore the trial court imposed a sentence of life imprisonment. After Appellant’s post-verdict motions were denied, this appeal followed.
Appellant raises the following issues on appeal: 1) Whether the record is so incomplete as to deprive Appellant of any meaningful appellate review, thus requiring a new trial; 2) Whether the trial court erred by allowing the Commonwealth to refresh the witness’ recollection with a police statement; 3) Whether the trial court erred in allowing the Commonwealth to introduce evidence of Appellant’s activities in New Jersey which included two subsequent shootings and other crimes; 4) Whether the Commonwealth committed prosecutorial misconduct during the trial and closing argument; 5) Whether the trial court erred by admitting into evidence remarks made by David Lee in New Jersey; and 6) Whether the trial court erred by failing to appoint new counsel for Appellant prior to trial.
Initially, Appellant asserted five claims of error, but claimed he was unable to argue *725 four of them because the pertinent notes of testimony had not been transcribed. On March 29, 1994, the Superior Court remanded this matter with instructions to Appellant’s counsel to prepare a statement in the absence of transcript in accordance with Pa.R.A.P. 1923, to serve a copy upon the Commonwealth for amendments, and then to submit the statement and amendments to the trial court for settlement, approval, and certification to the Superior Court.
Appellant first contends that he is entitled to a new trial because the record is so incomplete that it denies him meaningful appellate review. Although this matter was remanded by the Superior Court for the preparation of a Rule 1923 statement, Appellant continues to argue that the record is inadequate because two days of trial transcript were missing. Initially, we note that “ ‘[i]t is the appellant’s responsibility to provide a complete and comprehensive record to the reviewing court for the purpose of appeal.’” Commonwealth v. Bird, 409 Pa.Super. 211, 216, 597 A.2d 1169, 1171 (1991), citing Commonwealth v. Williams, 357 Pa.Super. 462, 466, 516 A.2d 352, 354 (1986). See, Damiano v. Damiano, 378 Pa.Super. 106, 110, 548 A.2d 298, 300 (1988) (“We may consider only the facts that appear in the official record, and the responsibility for providing a record that is comprehensive and complete rests with the appellant.”) (citations omitted). In this case, pursuant to Pa.R.A.P.1923, the Superior Court remanded this matter to provide Appellant with an opportunity to participate in the creation of a statement in lieu of the two days of trial transcript which were missing.
Pennsylvania Rule of Appellate Procedure 1923 provides as follows:
If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal.
Here, Appellant served a statement upon the Commonwealth and the Commonwealth responded with proposed amendments. Appellant’s statement and the Commonwealth’s response were submitted to the trial court which approved and certified a final version to the Superior Court. During these remand proceedings, Appellant never argued that the Rule 1923 proceedings were inadequate or that he was incapable of providing a comprehensive 1923 statement. It was Appellant’s responsibility during preparation of the 1923 statement to include all untranscribed matters which he considered essential to his appeal.
Appellant, however, remained silent not only when the Commonwealth submitted its proposed amendments for approval, but also when the trial court considered the final version which would be certified on appeal. Having failed to object to either the Commonwealth’s proposed amendments or to the final version which was certified by the trial court, Appellant cannot continue to claim that the record is inadequate.
Secondly, Appellant argues that the Commonwealth improperly refreshed a witness’ recollection with a prior consistent statement given by the witness to the police. In making this argument, however, Appellant does not positively identify the witness involved (he only assumes that it is John Mentz), explain the circumstances under which the witness’ prior statement was introduced, or set forth the contents of the statement. Appellant claims that based upon the inadequacy of the record he is unable to discuss the relevant case law or make any argument as to whether the evidence was properly introduced to refresh the witness’ recollection. In Ibn-Sadiika v. Riester, 380 Pa.Super. 397, 401-402, 551 A.2d 1112, 1114 (1988), the Superior Court held that “when an appellant fails to carry forward, or is indeeipherably vague in, argumentation upon a certain point in his appellate brief, that point is waived.” See, Harkins v. Calumet Realty, Co., 418 Pa.Super. 405, 614 A.2d 699 *726 (1992) (Issues in the statement of questions presented which are not developed in argument are deemed waived). In this case, having already determined that Appellant’s claim that the record is inadequate is merit-less, Appellant cannot continue to rely upon this claim as an excuse for his failure to develop an argument. Appellant has failed to furnish any relevant facts or legal argument with respect to whether the witness’ recollection was improperly refreshed and therefore, Appellant’s claim is waived.
Next, Appellant contends that the trial court improperly permitted the Commonwealth to introduce evidence of two subsequent shootings which took place in New Jersey during Appellant’s flight. The trial court permitted this testimony under the doctrine which provides that “evidence of flight is permissible for the purpose of establishing guilty knowledge.... [t]he essence of this doctrine is based upon a premise that the person who flees does so in recognition of his wrongdoing and is seeking to avoid punishment for that conduct.” Commonwealth v. Jones, 457 Pa. 563, 576, 319 A.2d 142, 149, cert. den., 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974) (citations omitted). See also, Commonwealth v. Harvey, 514 Pa. 531, 526 A.2d 330 (1987); Commonwealth v. Gorby, 527 Pa. 98, 588 A.2d 902 (1991).
While Appellant concedes that evidence of flight to avoid prosecution is admissible, he argues that as a precondition to its admission the Commonwealth must show that the defendant knew that police authorities were aware of the criminal conduct in question and were in pursuit for that purpose. This argument, however, was rejected by the Supreme Court in Commonwealth v. Jones, supra. In Jones, the appellant also argued that the accused must know that the police are aware of the crime and are in pursuit as a result. The Supreme Court disagreed, stating as follows:
Clearly it was never intended that the question turn upon the knowledge of the officers but rather the reasons which motivated the flight. It is sufficient under this doctrine that the circumstances justify an inference that the accused actions were motivated as a result of his belief that the officers were aware of his wrongdoing and were seeking him for that purpose.
Commonwealth v. Jones, 457 Pa. at 576, 319 A.2d at 149-150.
In this case, immediately after shooting Lynch in Philadelphia, Appellant and Lee fled to Wallace White’s apartment in New Jersey where they hid out and planned their escape to Florida. While at the apartment, Lee barricaded himself in White’s bedroom and tore the room apart. When Appellant walked through the broken glass and debris in the bedroom, he stumbled and his gun went off. At this point Lee escaped to the roof and Appellant took White hostage. When Appellant heard the police arrive, he dragged White through the apartment complex and shot two apartment residents in an effort to flee and elude the police. Based upon this evidence, an inference could be drawn that Appellant fled from the police because he believed he was wanted in connection with the shooting of Lynch and the police were seeking him for that purpose. The trial court thus properly permitted the Commonwealth to introduce evidence of the two shootings which occurred in New Jersey dining Appellant’s flight.
Furthermore, evidence of other crimes is admissible where that evidence forms part of the chain or sequence of events leading to the crime at issue, “... or became part of the history of the event on trial, or was part of the natural development of the facts_” Commonwealth v. Ross, 413 Pa. 35, 40, 195 A.2d 81, 83 (1963), quoting Commonwealth v. Williams, 307 Pa. 134, 148, 160 A. 602, 607 (1932). Here, the two shootings which took place in New Jersey were part of the history of the event on trial since they occurred immediately following Appellant and Lee’s flight from Philadelphia and while Appellant was attempting to escape from the authorities. Accordingly, the trial court did not err in admitting evidence of the two shootings in New Jersey.
Appellant further argues that the prosecutor engaged in misconduct during various stages of the trial, including opening and closing statements. It is well established that
*727 not every intemperate or uncalled for remark by the prosecutor requires a new trial. As we have stated many times:
[C]omments by a prosecutor do not constitute reversible error unless the “unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.”
Furthermore, the prejudicial effect of the prosecutor’s remarks must be evaluated in the context in which they occurred.
Commonwealth v. Reed, 400 Pa.Super. 207, 583 A.2d 459, 470 (1990), appeal denied, 528 Pa. 629, 598 A.2d 282 (1991), quoting Commonwealth v. D’Amato, 514 Pa. 471, 489-490, 526 A.2d 300, 309 (1987) (citations omitted).
In this case, Appellant fails to refer to any specific instances of prosecutorial misconduct during the trial or indicate the instances when he objected to the prosecutor’s conduct. Appellant makes a general assertion that the prosecutor engaged in misconduct during the trial but that the two days of missing transcripts preclude him from arguing this claim on appeal. After a thorough review of the record, we note that although the transcript from two days of the trial is missing, the opening and closing statements of the prosecution were transcribed and available to Appellant. Appellant therefore had the opportunity to review these transcripts and identify the specific remarks made by the prosecution which Appellant believed constituted misconduct. As a result of Appellant’s failure to specifically identify any remarks by the prosecutor which were allegedly prejudicial, we are unable to address the merits of Appellant’s claim.
Appellant also contends that the trial court erred by admitting into evidence the hearsay statement of co-defendant Lee. At trial, Wallace White testified and made reference to the statement which he had overheard Lee make to Appellant: “Thanks for watching my back.” According to Appellant, the hearsay statement of co-defendant Lee was inadmissible because it was not made in furtherance of or during the continuation of the conspiracy. “The co-conspirator exception allows the introduction of statements made by a co-conspirator, if they were made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of the conspiracy.” Commonwealth v. Zdrale, 530 Pa. 313, 317, 608 A.2d 1037, 1039 (1992). In Commonwealth v. Smith, 511 Pa. 343, 513 A.2d 1371 (1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987), the Pennsylvania Supreme Court held that flight from the scene of the crime and division of the proceeds from the crime were part of a common design to cany out the crime, and thus, statements made by one of the co-conspirators during flight in the getaway vehicle were admissible under the co-conspirator exception to the hearsay rule.
In this case, when Appellant and Lee arrived at White’s apartment to plan their escape to Florida, they were in the course of fleeing from the scene of the crime. Accordingly, their actions in New Jersey immediately following the murder were part of a common design and Lee’s statement to Appellant was properly admitted into evidence.
Furthermore, even if Lee’s statement to Appellant was improperly admitted, the error was harmless since there is sufficient independent evidence of Appellant’s guilt based upon the testimony of Marlene Fountain and other witnesses. Commonwealth v. Mayhue, 536 Pa. 271, 639 A.2d 421 (1994) (even if co-conspirator’s statement improperly admitted, error was harmless in light of other overwhelming evidence). At the trial, Marlene Fountain testified that she saw Appellant and Lee struggle with Timothy Lynch, shoot him, and then run away. Fountain also testified that when she ran to Lynch’s aid immediately following the shooting, Lynch uttered, “Damn, they shot me.” Wallace White testified that, shortly after the murder, Appellant and Lee arrived at his home in New Jersey in a nervous state and made immediate arrangements to go to Florida. The jury also heard several witnesses describe how Appellant took White hostage and went on a rampage in White’s apartment complex while trying to escape from the police. Thus, there was other evidence of Ap *728 pellant’s guilt, apart from White’s testimony concerning Lee’s hearsay statement, upon which the jury could base its finding of guilt.
Finally, Appellant contends that the trial court erred in refusing to appoint him new counsel prior to the commencement of trial. Appellant alleges that counsel was unprepared to represent him since he only visited Appellant once just before the start of the trial. “The decision of whether to grant a request for a change of counsel is a matter vested to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Our rules of criminal procedure provide that ‘[a] motion for change of counsel by a defendant to whom counsel has been assigned, shall not be granted except for substantial reasons.’ Pa.R.Crim.P. 316(e).” Commonwealth v. Basemore, 525 Pa. 512, 522, 582 A.2d 861, 865 (1990) (citations omitted). See also, Commonwealth v. Williams, 514 Pa. 62, 522 A.2d 1058 (1987) (refusal to grant request for appointment of new counsel on eve of trial was not abuse of discretion given defendant’s failure to state “substantial reasons” why new counsel should be appointed).
Here, trial counsel began representation of Appellant shortly after Appellant’s arrest in March 1989 and filed a series of pretrial motions and appeared at pretrial hearings on Appellant’s behalf. It was not until the first day of Appellant’s trial that Appellant voiced any dissatisfaction with counsel and petitioned for counsel’s withdrawal. Appellant, however, does not provide any substantial reasons why new counsel should have been appointed. There is no evidence supplied by Appellant that trial counsel failed to provide him with an adequate and effective defense. Since Appellant has not set forth any substantial reasons why new counsel should have been appointed on the eve of trial, the trial court’s refusal of Appellant’s request was not an abuse of discretion.
Judgment of sentence affirmed.