J-S31017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EARL P. MITCHELL, | : | |
| | : | |
| Appellant | : | No. 1058 WDA 2016 |

Appeal from the Judgment of Sentence February 18, 2016
In the Court of Common Pleas of Cambria County
Criminal Division at No.: CP-11-CR-0000826-2014

BEFORE: PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 11, 2017**

Appellant, Earl P. Mitchell, appeals from the Judgment of Sentence[1]

entered by the Cambria County Court of Common Pleas following his

conviction by a jury of Third-Degree Murder and related offenses.  After

careful review, we affirm.

The relevant facts, as gleaned from the certified record and the trial

court's July 13, 2014 Opinion, are as follows.  On January 24, 2014, three

men—Jareek Adams ("Adams"), Jonathan Moore ("Moore"), and Nysir Allen

"Allen")—approached Appellant, Linda Coleman ("Coleman"), and Coleman's

brother Hector ("Hector") as they were entering Appellant's vehicle.  They

---

[1] We note that Appellant purports to appeal from the trial court's July 13, 2016 Order denying his Post-Sentence Motions.  In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.  ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001).  We have corrected the caption accordingly.

exchanged words and Appellant shot Moore in his neck and leg after Moore approached Coleman in the backseat. Appellant also shot and killed Adams.

Appellant claimed that Moore had physically assaulted Coleman in the backseat after displaying a firearm concealed in his belt, but Coleman testified that Moore only opened the door and did not touch her. Coleman acknowledged that she had argued with Moore about money one week before the shooting. After pointing the gun at Moore, who was now on the ground on top of Adams, and telling Moore not to move, Appellant entered his vehicle and drove away.

On February 6, 2014, Manassas Police Officer Casey Smith ("Officer Smith") pulled Appellant over for traffic violations in Virginia. After running the license plate and discovering that Appellant, the registered owner of the vehicle, was wanted for murder in Pennsylvania, Officer Smith exited his vehicle to approach Appellant. Appellant then sped away in his vehicle. After a four-mile pursuit, spike strips flattened one of Appellant's tires and the vehicle stopped shortly thereafter. Appellant and another person fled the vehicle.

Appellant fled to a stranger's home and hid for several hours. Armed with the murder weapon, Appellant held two men hostage and did not permit them to leave or call the police. While hiding in the house, Appellant admitted to the hostages that he was the man police were searching for and

that he had killed someone. The two men eventually escaped and police arrested Appellant, who still possessed the murder weapon.

The Commonwealth charged Appellant with Criminal Homicide, Criminal Attempt (Homicide), four counts of Aggravated Assault, and Carrying a Firearm Without a License.[2] Despite having received several continuances, on January 19, 2016, Appellant sought a last-minute continuance moments before jury selection was to begin in order to locate and subpoena two additional witnesses: Jessica Santore and Nysir Allen.[3] The trial court denied this belated request after hearing argument and testimony from Appellant's private investigator regarding his efforts to locate the witnesses.

Appellant also sought the judge's recusal before trial after learning about the judge's involvement as a potential witness in an unrelated ongoing investigation by the Attorney General's Office in a two-page report disclosed prior to trial. N.T., 1/19/16, at 2. Appellant's counsel did request recusal, but Appellant persisted in his belief that a conflict existed because judge and

---

[2] 18 Pa.C.S. § 2501; 18 Pa.C.S. § 901; 18 Pa.C.S. § 2702; and 18 Pa.C.S. § 6106, respectively.

[3] Appellant claims he presented his continuance request two weeks before trial during a status conference on January 11, 2016. Appellant's Brief at 15. Our review of the transcript from that status conference reveals no continuance request on the record on that date. Rather, Appellant presented his continuance request regarding these witnesses on January 19, 2016, moments before jury selection. *See* N.T., 1/19/16, at 16, 21-39.

Attorney General's Office were friendly and "working together." ***Id.*** at 6. When asked about his concerns on the record, Appellant struggled to explain the basis for his objection and recusal request. The trial court denied Appellant's request.

Appellant proceeded to a jury trial. At trial, the Commonwealth presented the testimony of numerous witnesses, including Moore, Officer Smith, police detectives and other police officers, as well as several eyewitnesses, including Coleman.

Appellant testified in his own defense at trial and claimed he shot Adams and Moore to defend himself, Coleman, and Hector. Appellant also testified that he did not turn himself in to police, and instead fled to Virginia, because he was afraid the police would not believe him.

The court permitted additional testimony about Appellant's flight, Appellant's additional crimes, and his arrest in Virginia. At the close of testimony, the trial court provided a jury instruction regarding flight or concealment as evidence of Appellant's consciousness of guilt.

On January 28, 2016, the jury asked three questions in a handwritten note, and the trial court provided the following answers:

[Q:] On page 18, Section C . . Does this mean, with an illegal firearm[?]

[A:] *Yes, if the jury decides it is an illegal firearm. PTK*

[Q:] Self[-]defense is not valid. Due to Duty to retreat?

[A:] *That is the jury's decision.*

- 4 -

> [Q:] *Also does the reducing circumstances on 5A apply due to illegal firearm[?]
>
> [A:] *I (we) do not understand your question as worded. PTK. Please reword. PTK*

Court Exhibit 2, dated 1/28/16. The jury clarified its third question with the following question: "Can you utilize an unregistered firearm without a concealed weapons permit and claim self[-]defense if you had the opportunity to flee the situation[?]" Court Exhibit 3, dated 1/28/16. The trial court instructed the jury to "Reread the written charge I gave you and apply the facts, as you find them, to the law." ***Id.***

Shortly thereafter, the jury convicted Appellant of Third-Degree Murder, four counts of Aggravated Assault, and Carrying a Firearm Without a License.[4]

On February 2, 2016, Appellant filed a "Post-Trial/Pre-Sentence Motion" averring that counsel "received information"[5] that the trial court's response to one of the jury's questions misled the jury. Appellant averred that the jury "thought it was manslaughter but because of an instruction with the gun they thought they had to do third degree." Trial Court Opinion, 2/4/16, at 1. The trial court denied Appellant's Motion on February 4, 2016.

---

[4] The jury found Appellant not guilty of First-Degree Murder of Adams and not guilty of Attempted Murder of Moore.

[5] A juror purportedly conveyed this information to an attorney they knew, who in turn purportedly informed Appellant's trial counsel.

On February 18, 2016, the trial court sentenced Appellant to an aggregate term of 25 to 50 years' incarceration.[6] Appellant filed a timely Post-Sentence Motion, which the trial court denied on July 13, 2016.

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[7]

Appellant presents seven issues for our review:

I. Whether the trial court erred in failing to grant [Appellant's] numerous requests for a continuance when trial counsel averred that they were not prepared prior to the commencement of trial[?]

II. Whether the trial court committed a reversible error in allowing the jury to hear about [Appellant's] post[-]incident conduct which resulted in additional charges being filed against him in the Commonwealth of Virginia where said testimony was so unfairly prejudic[i]al to [Appellant] that it denied him of his right to a fair and impartial trial based on the relevant facts of this case[?]

III. Whether the trial court committed a reversible error in providing answers to the jurors['] questions they presented during deliberations as opposed to instructing the jury to review the jury instructions[?]

IV. Whether the trial court committed a reversible error in not granting [Appellant's] request for an arrest in judgment and

---

[6] The trial court sentenced Appellant to 15 to 30 years' incarceration for Third-Degree Murder, a consecutive term of 7 to 14 years' incarceration for Aggravated Assault of Moore, and a consecutive term of 3 to 6 years' incarceration for Carrying a Firearm Without a License. The trial court imposed no further penalty on the remaining offenses.

[7] The trial court filed a brief Order to comply with Pa.R.A.P. 1925(a) directing this court to its Opinions dated July 13, 2016 and February 4, 2016.

motion to reconvene jurors as a result of post[-]trial information from at least one juror indicating that the panel believed that they could not find [Appellant] guilty of the lesser charge of voluntary manslaughter based on the judge's response to their questions[?]

V. Whether the trial court committed a reversible error in failing to give the jurors an involuntary manslaughter instruction as requested by trial counsel[?]

VI. Whether the trial judge should have recused himself from the instant case when it was discovered that he was a party to an ongoing investigation being conducted by the Office of the Attorney General of Pennsylvania when said office was prosecuting the case at bar[?]

VII. Whether the consecutive sentences imposed by the trial court were excessive and unwarranted[?]

Appellant's Brief at 4.

### Denial of Appellant's Pre-Trial Motion for Continuance

Appellant first challenges the trial court's denial of his pre-trial request for a continuance to locate and subpoena two witnesses.

We review a trial court's decision to deny a continuance mindful of the following precepts:

Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Norton*, 144 A.3d 139, 143 (Pa. Super. 2016). We will reverse a trial court's denial of a continuance only when it is based on "an

unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Id.*

Pennsylvania Rule of Criminal Procedure 106 provides, in pertinent part:

> (A) The court or issuing authority may, in the interests of justice, grant a continuance, on its own motion, or on the motion of either party.
>
> (B) When the matter is before an issuing authority, the issuing authority shall record on the transcript the identity of the moving party and the reasons for granting or denying the continuance.
>
> (C) When the matter is in the court of common pleas, the judge shall on the record identify the moving party and state of record the reasons for granting or denying the continuance. . . .

Pa.R.Crim.P. 106.

When deciding a continuance motion to secure a material witness, the trial court must examine several factors:

> (1) the necessity of the witness to strengthen the party's case; (2) the essentiality of the witness to the party's case; (3) the diligence exercised to procure the witness' presence at trial; (4) the facts to which the witness could testify; and (5) the likelihood that the witness could be produced at the next term of court.

*Norton, supra* at 143-44.

In its Opinion denying Appellant's Post-Sentence Motion, the trial court addressed Appellant's challenge to the denial of his continuance request as follows:

## a. Nysir Allen

The evidence of record indicates that Mr. Allen was with Jonathan Moore and the late Jareek Adams on January 25, 2014. [Appellant] fails to persuasively argue that Allen's testimony was a necessity to strengthen his case. First, there is [a] bald assertion by [Appellant] in his brief that Allen was an "exculpatory, eye witness." However, there is no indication how or why Allen's testimony could have relieved him from criminal liability, especially given the fact that [Appellant] took the stand and admitted to firing his gun at Moore and Adams. The theory of the defense's presentation to the jury was that [Appellant] fired in self-defense and he fails to explain how that theory would have been bolstered or supported by the testimony of Allen.

For similar reasons we find that [Appellant] has not established that Allen's testimony was "essential" to his justification defense. While we assume that counsel was diligent in his attempts to procure the testimony of Allen[,] we have not been presented with any indication as to the facts that Allen could have established. There is no allegation that he could provide an alibi or similar exculpatory testimony[.]

\* \* \*

Most importantly, [Appellant] could not at the time of the continuance[,] nor can he now[,] establish that a continuance would have borne any fruit in the person of Allen. It is possible for people who do not wish to be located to evade even the most diligent and skillful investigator in perpetuity. For these reasons, we decline[d] to grant [Appellant's] motion in regard to Allen.

## b. Jessica Santore

There is far less indication that Santore could have added anything to [Appellant's] defense. Counsel tried unsuccessfully to link a gun that was found weeks after the shooting in the area of the crime scene with the shooting itself. This gun reportedly was registered to Santore. Counsel makes a claim that Santore "would establish a relationship between the victim and a gun found at the crime scene a few weeks following the incident." He does not specify which victim nor does he specify how her testimony would have been a necessity to [Appellant's] defense

or how it was essential to his defense. Again, we have no reason to doubt the diligence that was used in pursuing this witness[,] but we are again left with no indication as to what facts she could provide or how they could have strengthened [Appellant's] justification defense. Finally, we are not convinced that Santore could have been procured even if a continuance had been granted.

Last, we wish to address the argument advanced by [Appellant] that this case is "factually identical" to **Commonwealth v. Ross**, [57 A.3d 85 (Pa. Super. 2012) (*en banc*)]. Even a cursory review of the two cases belies this contention. The facts in **Ross** centered on a homicide of a young woman to which there were no [eyewitnesses], a body found many hours after the murder[,] and a case built almost exclusively on circumstantial forensic evidence. For these reasons, expert testimony to establish the cause, manner[,] and time of death was the axis on which the entire case turned. In the **Ross** case, defense counsel successfully argued [] that his lack of time to review expert testimony and consult with his own experts prior to trial hampered his defense. Moreover, a review of **Ross** also indicates that the denial of a continuance was not the sole finding of error by the Superior Court.

Conversely, this case involves a shooting with several corroborative [eyewitnesses], ballistics evidence linking a gun found to be in [Appellant's] possession with the shooting, evidence of flight[,] and a justification defense in which [Appellant] conceded he did in fact shoot the victims, albeit in self-defense. The two cases could not be more different from a factual perspective and they are easily distinguishable when closely scrutinized.

Trial Court Opinion, dated 7/13/16, at 5-7 (emphasis in original omitted; some paragraph breaks inserted).

We agree with the trial court's assessment. The trial court properly weighed the relevant factors set forth in **Norton, supra**, to support its conclusion that Appellant failed to show that the witnesses were material, that he could likely find them, or that he could procure their presence and

testimony at trial so as to show that the trial court improperly denied the last-minute request for a continuance. We, thus, conclude that the trial court properly exercised its discretion in denying Appellant's motion for a continuance.

**Evidence of Flight to Virginia, Other Acts, and Concealment**

In his second issue on appeal, Appellant challenges the admission of evidence related to Appellant's flight and other acts in Virginia following the shooting. Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule further provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

Commonly referred to as the *res gestae* exception or the complete story rationale, Rule 404(b)(2) also "permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts." **Commonwealth v. Ivy**, 146 A.3d 241, 251 (Pa. Super. 2016).

Our Supreme Court has permitted *res gestae* evidence of a defendant/murder suspect taking hostages while eluding or fleeing police after a vehicle pursuit nearly one year after the murder for which he is on trial, including the defendant's statements made during the hostage situation. **See, e.g., Commonwealth v. Lark**, 543 A.2d 491, 497-99 (holding that trial court could allow evidence of "a tangled web of threats, intimidation and criminal activity" to complete the story of the crime where defendant robbed victim, later murdered the victim, and threatened to kill the prosecutor). "Evidence of prior bad acts may also be introduced to prove consciousness of guilt, *i.e.*, that the defendant was aware of his wrongdoing." **Ivy**, **supra** at 251.

"In a criminal case, this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). **See also** Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 404.11 *et. seq*. (2017 ed. LexisNexis Matthew Bender). "Where evidence of prior bad acts is admitted, the defendant is entitled to a

jury instruction that the evidence is admissible only for a limited purpose."

*Ivy, supra* at 251.

> The trial court addressed Appellant's evidentiary challenge as follows:
>
> As noted in the Court's Order of January 22, 2016, we permitted the admission of evidence of [Appellant's] unprovoked flight from authorities, his concealing himself within a private residence, holding people against their will therein, and being apprehended in possession of the firearm that ultimately was matched to the murder by ballistics testing.  We found that this was probative for showing knowledge, consciousness of guilt[,] and because it went to the "*res gestae*" of the Commonwealth's case.  We relied on two Pennsylvania Superior Court cases, **Commonwealth v. Gooding**, 649 A.2d 722 (Pa. Super. 1994) and **Commonwealth v. Hudson**, 955 A.2d 1031 (Pa. Super. 2008)[].
>
> In **Gooding**, immediately after committing a homicide in Philadelphia, the [d]efendant and an accomplice fled to New Jersey where he eventually got engaged in a standoff with police whereby a hostage was taken and shots were fired.  [**Gooding**, *supra* at 726].  The Superior Court upheld the trial court's ruling that evidence of these crimes was admissible at the underlying homicide trial both to show consciousness of guilt and to help develop the "*res gestae*" of the Commonwealth's case.  **Id.**
>
> Likewise, in **Hudson** the Superior Court upheld the lower court's ruling that evidence of the accused's flight was admissible to show consciousness of guilt.  [**Hudson**, *supra* at 1036].
>
> *      *      *
>
> In **Hudson**, the defendant immediately fled after the crime and when approached by police once again attempted to escape. [**Id.** at 1036-37].
>
> In the instant matter, we permitted the admission of evidence that [Appellant] fled to Virginia immediately after the shooting.  The evidence showed that when confronted by authorities in Virginia, [Appellant] fled in his vehicle before crashing it.  He then fled on foot before entering a private residence and holding two men hostage until they were able to escape.  The purpose of

this testimony was to show consciousness of guilt and to develop the story of the case for the jury. The jury was instructed as to the purpose of this testimony.[2] As the Commonwealth points out in its brief, all evidence that is prejudicial to the [Appellant] is not necessarily [unfairly prejudicial]. The comment to Pennsylvania Rule of Evidence 403 instructs that unfair prejudice "means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Comment to Pa.R.E. 403. We have indicated why we ruled that the evidence was relevant and agree that it was prejudicial to the [Appellant], however, based on our analysis do not find it to be unfairly prejudicial. We find our instruction to the jury quoted in [foot]note 2[] further ameliorated against any unfair prejudice. Based on our review of precedent, we do not believe this evidence was admitted in error and therefore decline to afford [Appellant] relief on this issue.

[2] The instruction was as follows: "There was evidence, including the testimony of police officers and others, that showed that the defendant fled from the police and hid from the police by going to the State of Virginia and hiding in a house. The defendant maintains he did so because he was scared and his distrust of police. The credibility, weight, and effect of this evidence is for you to decide. Generally speaking, when a crime has been committed, and a person thinks he is or may be accused of committing it and he flees or conceals himself, such flight or concealment is a circumstance tending to prove a person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of [guilt] in every case. A person may flee or hide for some other motive, and he may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case, and especially upon motive that may have prompted the flight or concealment. You may not find the defendant guilty solely on the basis of evidence of flight or concealment." Trial Transcript, 1/28/16, pp. 69-70.

Trial Court Opinion, 7/13/16, at 9-11. We agree with the trial court's

assessment.

Appellant's flight to, presence in, and concealment in Virginia, as well as his additional crimes and statements there, were admissible under Pa.R.E. 404(b)(2) as both *res gestae* evidence and to prove Appellant's consciousness of guilt. The trial court properly weighed the probative value of the evidence in the light of the potential for unfair prejudice in accordance with Pa.R.E. 404(b)(2). Moreover, the trial court provided a cautionary jury instruction explaining the limited purpose of this evidence. We, thus, discern no abuse of the trial court's discretion in admitting this evidence. Appellant is not entitled to relief.

**Trial Court's Responses to Jury's Questions**

In his third issue on appeal, Appellant challenges the trial court's supplemental instructions to the jury. As noted above, the jury sent notes from the jury room with 3 questions, one of which the trial court asked them to clarify. After clarification, the trial court responded by referencing its prior instructions.

Appellant avers that the trial court provided misleading, incomplete, erroneous, and "conclusory" answers to the jury's questions. Appellant's Brief at 22-23. Appellant argues that the trial court should have repeated the charges "in their entirety" in order to provide "the most straightforward, appropriate, and direct answer" to the jury's questions. *Id.* at 22. Appellant argues that the trial court's instructions unfairly prejudiced him since "it was

clear that the jury was struggling with whether to find him guilty of Murder in the 3rd degree or Voluntary [M]anslaughter[.]" *Id.*

"Where a jury submits on its own motion a question to the court indicating confusion or a request for clarification, the court may properly clarify the jury's doubt or confusion." *Commonwealth v. Kidd*, 380 A.2d 416, 419 (Pa. Super. 1977) (citation omitted). "The feasibility and scope of any supplemental instructions to the jury is a matter within the discretion of the trial court." *Id.* (citation omitted). The trial court may also "go beyond the jury's question in its response to the question." *Id.* (citation omitted).

The trial court addressed Appellant's issue as follows:

A review of the written jury instructions indicates that [the jury's clarifying fourth question was] very likely[] the jury's attempt to reword the prior question [that] deal[t] with the duty to retreat and the illegal possession of a firearm. While we cannot be certain that this is an attempt by the jury to reword the question[,] we can be certain that the jury did have the opportunity to submit another question, therefore, the [Appellant's] claim that somehow there was a lost opportunity to clarify issues of law for the jury is not in accord with the facts.

When answering questions from the jury during deliberations[,] the [c]ourt is mindful of further confusing issues, drawing improper attention to facts not at issue[,] and/or usurping the role of the jury as factfinder. We attempted to tailor our answers in this regard because we were also mindful that the jury had, in its possession, the instructions we had previously read to them detailing the elements of the crimes charged and the defenses raised. Because the [c]ourt did not understand the first question, we made the decision that it was better to err on the side of having the jury rephrase it, rather than answer the wrong question or give an answer that further confused them. Ultimately, the belief that the jury was confused is belied by their returning a verdict shortly after our final instruction [to]

them. For these reasons[,] we decline to afford relief to [Appellant] on this issue.

Trial Court Opinion, 7/13/16, at 13-14. We agree with the trial court's assessment. We discern no abuse of the trial court's discretion and affirm on the basis of the trial court's Opinion. *Id.*

### Appellant's Attempt to Impeach the Jury's Verdict

In his fourth issue on appeal, Appellant challenges the trial court's denial of his "Post-Trial/Pre-Sentence Motion" in which he sought to arrest the judgment and reconvene the jury in order to impeach the verdict based on the purported juror confusion regarding the supplemental jury instruction. No relief is warranted.

"The refusal of a new trial on the basis of alleged juror misconduct is within the sound discretion of the trial judge." *Commonwealth v. Trudell*, 538 A.2d 53, 59 (Pa. Super. 1988). When ruling on a Motion in Arrest of Judgment, "the trial court is limited to rectifying trial errors, and cannot make a redetermination of credibility and weight of the evidence[.]" *Commonwealth v. Marquez*, 980 A.2d 145, 147–48 (Pa. Super. 2009) (*en banc* ) (citation omitted).

It is well established that "a juror may not impeach [his] own verdict after the jury has been discharged, and [that] a juror is not competent to testify as to what transpired in the jury room. *Commonwealth v. Sero*, 387 A.2d 63, 67 (Pa. 1978). This principle, known as the "no-impeachment"

rule in common law, is embodied in Pennsylvania Rule of Evidence 606, which provides in relevant part:

**(b) During an Inquiry into the Validity of a Verdict**

*(1) Prohibited Testimony or Other Evidence.* During an inquiry into the validity of a verdict, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

*(2) Exceptions.* A juror may testify about whether:

(A) prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention; or

(B) an outside influence was improperly brought to bear on any juror.

Pa.R.E. 606(b).

The no-impeachment rule reflects a policy of "balancing the aim to ensure fair and impartial decision-making with the interests in confidentiality of jury deliberations and finality of duly rendered verdicts." ***Pratt v. St. Christopher's Hosp.***, 866 A.2d 313, 320 (Pa. 2005) (footnotes omitted). Courts recognize that jury "deliberations are secret and their inviolability must be closely guarded." ***Friedman v. Ralph Bros., Inc.***, 171 A. 900, 901 (Pa. 1934). ***See also Pratt***, ***supra*** at 325 (noting that the clear purposes of the no-impeachment rule are "to discourage harassment of jurors by losing parties, encourage free and open discussion among jurors,

reduce incentives for jury tampering, promote verdict finality, and maintain the viability of the jury as a judicial decision-making body.").

Both the common law and Pa.R.E. 606(b) acknowledge two narrow exceptions to the no-impeachment rule. First, a court may admit testimony concerning whether "prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention[.]" Pa.R.E. 606(b)(2)(A); **Pratt**, **supra** at 319. Second, a court may allow post-trial testimony regarding extraneous influences that might have affected the jury during its deliberation. Pa.R.E. 606(b)(2)(B); **Pratt**, **supra** at 319.

Here, Appellant does not argue that prejudicial information not of the record and beyond common knowledge was improperly brought to the jury's attention. Nor does he suggest that an outside influence affected the jury during its deliberation. Appellant's assertions do not fall under any exception to the no-impeachment rule. Thus, the trial court properly exercised its discretion in denying Appellant's Motion.

**Involuntary Manslaughter Instruction**

In his fifth issue on appeal, Appellant avers that the trial court erred in failing to instruct the jury regarding Involuntary Manslaughter.

Our standard of review in assessing a trial court's jury instruction is as follows:

> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated

portions, to determine if the instructions were improper. We further note that[] it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013).

"A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S. § 2504.

The trial court addressed Appellant's challenge to the jury instructions as follows:

The defense mounted in this case, including the testimony from [Appellant] himself, was that [Appellant] did in fact discharge his weapon purposefully at the two victims based on his belief that he was defending both himself and the other two individuals in the car from an attack by Moore and Adams. There are no facts of record to suggest that [Appellant] discharged his firearm in a grossly negligent or reckless ma[nn]er but rather that the act of firing [the] gun was intentional. Under questioning from his attorney, David Beyer, [Appellant] testified as follows:

Q: Okay. What happened next?

- 20 -

A: He pulled him down. Hector is coming around. And I thought I had to do what I had to do to protect my life, to protect Janay's life, to protect Hector's life.

Q: What was going on in your mind at that time?

A: Shoot and run. Protect. I don't know, protect myself.

This is only one portion of the record wherein [Appellant] acknowledges that his action in firing his gun was an intentional act, however, there are numerous portions of his testimony that demonstrate this. [Appellant] can point to no evidence of record that would establish that his action in firing the gun amounted to recklessness or gross negligence and therefore it was not improper to refuse the charge of involuntary manslaughter. The facts of record simply did not support such an instruction.

Trial Court Opinion, 7/13/16, at 15-16 (citation omitted).

Our review of the record supports the trial court's assessment. Appellant was not entitled to an instruction on involuntary manslaughter and the trial court did not err in refusing to provide such instructions to the jury. We discern no abuse of the trial court's discretion.

**Recusal**

In his sixth issue on appeal, Appellant challenges the trial court's denial of his Motion to Recuse.

Appellate courts presume judges are fair and competent. *In re Lokuta*, 11 A.3d 427, 435 (Pa. 2011). We review the denial of a motion to recuse for an abuse of discretion, while "recognizing that the judge himself is best qualified to gauge his ability to preside impartially." *Commonwealth v. Harris*, 979 A.2d 387, 392 (Pa. Super. 2009) (citations omitted).

- 21 -

A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.

*Lokuta*, *supra* at 435-36 (internal quotation marks and citations omitted).

The party requesting recusal has the burden "to produce evidence establishing bias, prejudice[,] or unfairness[,] which raises a substantial doubt as to the jurist's ability to preside impartially." *Arnold v. Arnold*, 847 A.2d 674, 680 (Pa. Super. 2004). If the judge determines he or she can be impartial, the judge must then decide "whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary." *Chadwick v. Caulfield*, 834 A.2d 562, 571 (Pa. Super. 2003) (citations omitted).

The trial court addressed Appellant's issue as follows:

Simply put, the investigation pursued by the Office of Attorney General that was ongoing at the time of the trial in this case has nothing whatsoever to do with this case. The Court was questioned in regards to a matter that occurred prior to [Appellant's] birth. Moreover, when asked what conflict of interest [Appellant] thought existed his reply was, "it isn't really—has no relation." This [c]ourt did reflect at the time of the initial objection by [Appellant] on his ability to proceed in a fair and impartial manner and is satisfied now, as then, that no actual or potential conflict of interest existed. [Appellant] has produced absolutely no evidence of "bias, prejudice, or unfairness necessitating recusal."

Trial Court Opinion, 7/13/16, at 8 (citation omitted). We agree with the trial court's assessment and conclude that Appellant failed to produce or point to any evidence to overcome the presumption that the trial court is fair and

competent. Accordingly, the trial court properly exercised its discretion in denying Appellant's recusal motion.

**Discretionary Aspects of Sentence**

Appellant next challenges the imposition of consecutive rather than concurrent sentences. This implicates the discretionary aspects of his sentence. *Commonwealth v. Moury*, 992 A.2d 162, 169 (Pa. Super. 2010).

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (citations omitted).

In the instant case, our careful review of the record reveals that Appellant did not include in his Brief a separate Rule 2119(f) Statement, and

the Commonwealth has objected to this defect.[8] Thus, we find that the defect is fatal.[9]

Because we conclude that Appellant failed to preserve his challenge to the discretionary aspects of his sentence, we will not address the merits of this claim.

Judgment of Sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/11/2017</u>

---

[8] This Court may overlook an appellant's failure to comply with Rule 2119(f) where the Commonwealth fails to object to the omission and a substantial question is obvious from the appellant's brief. ***Commonwealth v. Kneller***, 999 A.2d 608, 614 (Pa. Super. 2010).

[9] Moreover, Appellant's challenge to his consecutive sentences fails to present a substantial question. ***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 598 (Pa. Super. 2010) ("Generally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal."). Appellant's actual argument section also fails to make this particular argument, and Appellant instead argues that the trial court "failed to consider" and weigh various mitigating sentencing factors. ***See*** Appellant's Brief at 36-39.